**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**Case No.:  1:20-cv-22044-JEM**

GOVERNMENT EMPLOYEES INSURANCE
CO., et. al.
Plaintiffs

v.

MIAMI MEDICAL GROUP, INC., et.al.
Defendants
_____

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO**
**FED.R.CIV.PRO. 12(b)(6)**

Defendants, Miami Medical Group, Inc., Juan Jimenez, Graciela Jimenez, Jose Marquez, M.D., Maria Nodarse, D.C., Yara Vazquez and Hai Uzan (hereinafter collectively "Miami Medical"), by and through their undersigned counsel, do hereby Move this Honorable Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to Dismiss Plaintiff's Complaint and in support thereof aver as follows:

**I.      GEICO ALLEGES A BILLING DISPUTE BUT FAILS TO STATE A**
**PLAUSIBLE CLAIM FOR *FRAUD***

GEICO's overwrought Complaint attempts to elevate a dispute about the technical requirements of PIP billing into a salacious RICO conspiracy.  It does so *solely* on the bald conclusion that a medical doctor who submits a bill for straightforward physical therapy services, provided under the doctor's general or indirect supervision by people specially trained in the provision of such services, does so *intending to commit criminal fraud*.  That it takes GEICO 312 pages to construct this accusation instead of, say, a simple call to the local police department, alone exposes its accusation of fraud to be an invention of business consultants and lawyers rather than any legitimate controversy.

The Complaint's very size alone states the obvious: the level of supervision required by Florida law of medical doctors over "incident to" services provided by unlicensed assistants in order for the doctor to bill for said services is not clear.  It is only after parsing portions of various state, federal, and secondary sources that GEICO conclude the level legally required is "direct" and that doctors are therefore required to be physically present within the room as incident-to services are performed in order to bill for them under the doctor's name.  Despite the intricacy of the analysis needed to reach it, GEICO blithely announces its conclusion to be so obvious that any doctor who acts in contradiction of it is, essentially, John Gotti.

The Complaint attempts to gird itself with a secondary, purely legal conclusion that is just plain logically impossible on its face.  It posits that the Miami Medical Defendants *must* have committed criminal fraud because each of their records so obviously reflected unnecessary and unreasonable care that anyone "legitimately" reviewing any one them would have concluded immediately upon doing so that each was *entirely* fraudulent…*except for the GEICO PIP adjusters who paid for the treatment over and over and over again.*

Every cause of action alleged by GEICO is premised entirely on these implausible accusations of criminal fraud.[1]  As detailed below, however, GEICO's self-serving legal conclusions and circular reasoning fail in all respects to serve as plausible bases for alleging intentional fraud, and each one of GEICO's causes of action therefore fail to state a claim as a matter of law.

A.     <u>GEICO CONCLUDES THAT "DIRECT" SUPERVISION IS REQUIRED</u>

---

[1] The Counts applicable to Miami Medical are 1 and 28-33 and include a demand for Declaratory Judgment, federal and state RICO claims, FDUTPA, Common Law Fraud, and Unjust Enrichment.  Each incorporates every prior allegation of the Complaint and is entirely premised on the accusation that Miami Medical submitted and received payment for knowingly false bills.

GEICO alleges that Miami Medical violated Florida's Health Care Clinic Act (Fla. Stat. § 400.9935), based on the conclusory accusation that its Medical Director, Jose Marquez, M.D. "never conducted systematic reviews" of Miami Medical's billings to ensure "that the billing was not fraudulent or unlawful" and permitted Miami Medical to "misrepresent" the identities of the treating providers. See ECF 1, ¶147-150. GEICO further alleges that criminal fraud was committed because the doctors under whose names "virtually all" of the at issue bills were submitted – Feijoo and Nodarse – were "most likely" not physically present in the room when in each physical therapy service they had prescribed was provided by their assistants. See ECF, ¶296-297.

The heart of GEICO's criminal indictment against Miami Medical is found in paragraphs 312-316. Therein, GEICO weaves a tale of statutory divination, starting with Florida's PIP statute, moving next to the Medicare Claims Processing Manual, and ending with the Code of Federal Regulations. Through this self-serving journey of creative lawyering, GEICO patches together its legal conclusion of when and in what form "direct supervision" is required:

**312.    As set forth herein, the No-Fault Law's billing requirements provide – among other things – that all PIP billing must comply with the instructions promulgated by the Centers for Medicare & Medicaid Services for the completion of HCFA-1500 forms. See Fla. Stat. § 627.736.**

**313.    All of the billing that the Defendants submitted through Miami Medical to GEICO, including the billing for putative physical therapy services, was submitted on HCFA-1500 forms.**

**314.    Pursuant to the instructions promulgated by the Centers for Medicare & Medicaid Services for the completion of HCFA-1500 forms, the name of the health care provider who actually rendered or directly supervised the underlying physical therapy treatment must be listed on the HCFA-1500 form. See, e.g., Medicare Claims Processing Manual, Chapter 26 – Completing and Processing Form CMS-1500 Data Set.**

**315.    To "directly supervise" a physical therapy treatment, a physician "must be present in the office suite and immediately available to furnish assistance and direction throughout the performance of the procedure. It does not mean that the physician must be present in the**

room when the procedure is performed." See, e.g., Medicare Claims Processing Manual, Chapter 26 – Completing and Processing Form CMS-1500 Data Set, citing 42 C.F.R. 410.32.

316.    Pursuant to the instructions promulgated by the Centers for Medicare & Medicaid Services for the completion of HCFA-1500 forms, to the extent that a physician is not actually "directly supervising" a physical therapy treatment, then the actual name of the person who is actually performing the physical therapy treatment must be listed on the HCFA-1500 form. See, e.g., Medicare Claims Processing Manual, Chapter 26 – Completing and Processing Form CMS 1500 Data Set.

As the Court can see, the rabbit in GEICO's hat is placed there in paragraph 315, wherein it simply pronounces that the various statutes, regulations and secondary sources to which it generally cites, *when taken together*, demand "direct" supervision and, further, *collectively* define "direct" supervision as being "present in the office suite."[2]

GEICO is certainly entitled to use this legal opinion, however self-serving it may be, to justify its denials of PIP bills.  But GEICO goes far further, alleging that Miami Medical, by billing for physical therapy services under the names of Dr. Feijoo, and/or Dr. Nodarse when it appears that both doctors were not always physically present within the room when each such service was rendered by their assistants, committed intentional fraud.

Though GEICO tries to obscure reality with a sheer volume of parties and words, its *entire* allegation of fraud boils down to its purely legal conclusion about the level of supervision required. Every "fact" pleaded by GEICO is designed solely to show that it is "improbable" that the doctors' level of supervision met the definition of "direct supervision" which GEICO concludes is so obviously required that anyone who bills otherwise is a RICO conspirator.

But if the level of supervision required of a licensed doctor over therapy treatments provided for what GEICO calls "low-severity" injuries is not in fact required to be "direct" as GEICO has defined it, then GEICO has failed to plausibly allege even one single false

---

[2] GEICO actually goes further than this by accusing the doctors of fraud based on the appearance that they were not *in the same room* as each physical therapy service was being provided.  See, e.g. ¶734(i-v).

representation, much less the grand criminal conspiracy it breathlessly accuses Miami Medical of masterminding.

This is because, by its own pleading, GEICO concedes that Miami Medical's bills were entirely accurate if in fact Dr. Marquez, Dr. Feijoo and/or Dr. Nodarse provided an *appropriate* level of supervision. GEICO admits that every note reflecting the services provided by nonphysician personnel was signed and acknowledged to have been entirely provided by the nonphysician personnel who performed them. GEICO could therefore *never* have paid a single bill under the false impression that Dr. Marquez, Dr. Feijoo or Dr. Nodarse had performed them *personally*. See ECF 1, ¶320 (i-x).

By paying Miami Medical's bills, GEICO acknowledged that if Dr. Marquez, Dr. Feijoo and/or Dr. Nodarse provided an appropriate level of supervision, whatever that may be, then all of Miami Medical's were perfectly accurate and GEICO has failed to allege a plausible basis even to deny a single bill.

But even if GEICO's self-serving legal conclusion and definition concerning "direct" supervision is ultimately determined to be correct, its allegation of *knowing fraud* cannot be considered plausible. GEICO has, at best, only alleged facts to support an inference that Dr. Marquez, Dr. Feijoo and/or Dr. Nodarse were not physically in the room while some undefined number of more than 23,000 billed services were provided. GEICO has *not* plead *any* facts as to the level of supervision the doctors *actually provided*, nor any facts to demonstrate that Miami Medical *knew* they were billing incorrectly (if they even were). In fact, the implausibility of knowing fraud is demonstrated by GEICO's claim not to have known it was fraud, either.

B.     **FRAUD THAT IS OBVIOUS TO EVERYONE EXCEPT GEICO IS IMPLAUSIBLE**

GEICO alleges criminal fraud on the basis that representations made by Miami Medical in its treatment notes were so obviously deficient in every respect that any objectively reasonable person reviewing them would have seen immediately that they were entirely fraudulent.  (See, ECF 1, ¶328-331).  Yet in paragraph 883, in support of its claim of justifiable reliance, GEICO alleges that it was defrauded because it "did rely" on the "facially-valid documents submitted to GEICO" in deciding to issue payments.  Both of these allegations cannot plausibly be true at the same time.

A deeper dive into GEICO's accusations only adds to the confusion.  In paragraph 320(i-x), GEICO lists "examples" of how Miami Medical's records "concealed" the identity of the person actually performing the physical therapy services billed under Dr. Feijoo and/or Dr. Nodarse's name.  Yet, in every single one of these examples, GEICO admits that the therapy notes were signed by the person performing the service "in keeping with the fact that the pertinent services were performed" *by the person who signed them*.

What GEICO is alleging as fraudulent misrepresentation is obviously nothing of the kind. The only plausible way GEICO could have been 'misled" by a single bill of Miami Medical is by never looking at them in the first place.  GEICO is thus demanding that the Court accept as a reasonable standard of PIP claims adjusting (and consumer conduct in general) of blindly paying bills for years without reviewing any of the documentation submitted along with them and still be free, apparently upon any whim, to later review the same bills and documentation and claim to have been "defrauded" by the representations contained therein.  In pressing such a standard, GEICO is not only asking the Court to excuse insurers from any reasonable diligence, it requires the Court to ignore the very regulatory scheme GEICO interprets to arrive at its allegation of criminal fraud in the first place.

The PIP statute and other regulations relied upon by GEICO clearly contemplate that insurers are meaningfully considering all of the documentation submitted in support of bills for services rendered *before* issuing payment.  These statutes and regulations do not exist for insurers to cherry-pick portions of them they wish to exploit for their advantage.  By attempting to do just that, however, GEICO only further exposes the implausibility of its conclusion that records could be fraudulent on their face to everyone but GEICO.

### C.    GEICO HAS STATED NO BASIS FOR ANY CAUSE OF ACTION AGAINST YARA VAZQUEZ & HAI UZAN

The only allegations made against Yara Vazquez and Hai Uzan are that they provided physical therapy services while employed at Miami Medical at the specific direction of doctors, created *accurate* notes of what they did, and signed their names to every note they created.  There is not a single averment of fact offered to support that Ms. Vazquez or Mr. Uzan had any role in, knowledge of, or responsibility for creating and submitting the HCFA forms which constitute the sum total of allegedly false statements made to GEICO.  This failure of pleading requires that the causes of action against Ms. Vazquez and Mr. Uzan be dismissed in their entirety.

### D.    GEICO'S CLAIMS ARE INSUFFICIENTLY PARTICULAR

GEICO alleges that 23,636 individual services provided at Miami Medical Health were fraudulently billed but offers a potentially different theory as to how for each one by applying caveats such as "in many cases" and "to the extent the services were provided at all" when describing the fraud alleged to have been committed.  Such "and/or" types of caveats with respect to the critical allegation renders the Complaint insufficiently particular under Rule 9.  Should the Court determine that GEICO may proceed with some or all of its action, it is respectfully requested that it be required to identify the particular fraud it is alleging with respect to each date of service.

### MEMORANDUM OF LAW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, which, if accepted as true, would state a claim to relief that is <u>plausible on its face</u>. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. **The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint.** <u>Asbury v. Slider</u>, 2020 WL 871097, at \*2 (M.D. Fla. Feb. 21, 2020), *citing* <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2))(emphases added).

The "plausibility standard requires that the allegations be more than merely conceivable." <u>Pavic v. Laser Spine Inst., LLC</u>, No. 8:13-CV-02578-EAK, 2014 WL 2707953, at \*1 (M.D. Fla. June 13, 2014), *citing* <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). "Application of this standard follows two analytical principles. First, the court will not presume the truth of a complaint's **legal conclusions**. Second, a complaint's well-pleaded factual allegations must allow the court to infer the plausibility, rather than the **mere possibility**, that the plaintiff is entitled to the relief sought." <u>Pavic v. Laser Spine Inst., LLC</u>, No. 8:13-CV-02578-EAK, 2014 WL 2707953, at \*1 (M.D. Fla. June 13, 2014) (emphasis added).

## I.   <u>THE SIZE OF GEICO'S COMPLAINT ITSELF EXPOSES ITS IMPLAUSIBILITY</u>

Cutting through its voluminous folds, GEICO's Complaint concedes that Florida law alone does not clearly define the level of supervision required of a prescribing doctor to bill under his name for services provided by nonphysician personnel. There is certainly no provision within the PIP statute itself which says as much. This is why GEICO must weave its way across state and federal statutes, obscure secondary sources, and the Code of Federal Regulations, to arrive at the patchwork of a legal conclusion which is transparently devoted to improving GEICO's profit margin.

A.    **Florida's Health Care Clinic Act**

GEICO starts with Florida's Health Care Clinic Act, Fla. Stat. § 400.9935, the relevant

portion of which states:

**(1) Each clinic shall appoint a medical director or clinic director who shall agree in writing to accept legal responsibility for the following activities on behalf of the clinic. The medical director or the clinic director shall:**

**(g) Conduct systematic reviews of clinic billings to ensure that the billings are not fraudulent or unlawful. Upon discovery of an unlawful charge, the medical director or clinic director shall take immediate corrective action.**

A Medical Director accepts "legal responsibility" for the activities of the clinic by

conducting "systematic reviews" of the clinic's billings.  Importantly, however, **"[t]he Clinic Act**

**does not state exactly how thorough a medical director's systematic review must be**…"

Allstate Ins. Co. v. Vizcay, 826 F.3d 1326, 1332 (11th Cir. 2016).

Whatever type of systematic review may *actually* be required (and not even GEICO

pretends to know), the Florida Administrative Code clearly contemplates that Medical Directors

are not required to be, nor are they expected to be, physically present within the clinic as the

treatment for which they are accepting legal responsibility is provided:

**A medical or clinic director may not serve in that capacity for more than a maximum of five health care clinics with a cumulative total of more than 200 employees and persons under contract with the health care clinic at any given time. A medical or clinic director may not supervise a health care clinic more than 200 miles from any other health care clinic supervised by the same medical or clinic director.**

Fla. Admin. Code Ann. r. 59A-33.013.

By expressly permitting doctors to serve simultaneously as the Medical Director of up to

5 clinics, which can be as many as 200 miles apart, the legislature clearly did *not* intend to require

their physical presence in each office as the treatment they are accepting legal responsibility for is

being provided.

B.    **The PIP Statute**

GEICO next moves to the PIP statute, which provides in relevant part that an insurer or insured is not required to pay a claim or charges:

**For medical services or treatment billed by a physician and not provided in a hospital unless such services are rendered by the physician or are <u>incident to</u> his or her professional services and are included on the physician's bill, including documentation verifying that the physician is responsible for the medical services that were rendered and billed.**

Fla. Stat. Ann. § 627.736(5)(a)(5)(b.1)(f)(emphasis added).

The PIP statute does not define what the Florida legislature intended by the phrase "incident to" but does, as GEICO points out, refer generally in various places throughout the statute to Medicare guidelines.  As the Court is no doubt aware, however, the legal paper devoted over the decades to interpreting the seemingly simple phrase of "incident to" under Medicare guidelines could fill an entire wing of every courthouse in the country.  Consider just the "definition" cited by <u>United States v. Marder</u>, 208 F. Supp. 3d 1296, 1306–07, fn. 11 (S.D. Fla. 2016): "Incident to services" are services that are furnished by other employees of the physician—such as a PA or NP—incident to the professional services personally rendered by the physician."

In other words, "incident to" services are those that are…"incident to."

This lack of clarity within the PIP statute necessarily means that GEICO cannot rely upon it to allege that the services provided at Miami Medical were even *incorrectly* billed, much less criminally fraudulent.

C.    <u>Medicare Manuals and the CFR</u>

Because the PIP statute does not give GEICO the conclusion it wants, it next turns to a Medicare Claims Processing Manual, and from there to the Code of Federal Regulations, suggesting that both can be read in conjunction with one another as if they are together this week's People Magazine.  Regardless of GEICO's gloss, however, the complexity of analysis (and

ridiculous number of pages) necessary to achieve its legal conclusion alone demonstrates the implausibility of alleging criminal fraud based on a transgression of it.

For example, far from providing the clarity GEICO claims it does, the Medicare Processing Manual states with respect to properly filling in box 31 of the HCFA-1500 form:[3]

**In the case of a service that is provided <u>incident to</u> the service of a physician or non-physician practitioner, when the ordering physician or non-physician practitioner is directly supervising the service as in 42 CFR 410.32, the signature of the ordering physician or non-physician practitioner shall be entered in item 31. When the ordering physician or non-physician practitioner is not supervising the service, then enter the signature of the physician or non-physician practitioner providing the direct supervision in item 31.**

Here, for the first time in a guideline conceivably applicable to first party medical bills in Florida, we see the word "direct" modifying the word "supervision."  However, in the very next sentence, Medicare contradicts itself by eliminating the word "direct" in the first clause.  By eliminating the word "direct" in the first clause of the next sentence regarding "incident to" services, Medicare implies that an ordering physician may be able to supervise an "incident to" service without necessarily doing so "directly."

This is a reasonable inference because 42 CFR §410.32 outlines *3 different types of supervision*: General, Direct, and Personal:

**(i) *General supervision* means the procedure is furnished under the physician's overall direction and control, <u>but the physician's presence is not required during the performance of the procedure</u>. Under general supervision, the training of the nonphysician personnel who actually perform the diagnostic procedure and the maintenance of the necessary equipment and supplies are the continuing responsibility of the physician.**

**(ii) *Direct supervision* in the office setting means the physician must be present in the office suite and immediately available to furnish assistance and direction throughout the performance of the procedure. It does not mean that the physician must be present in the room when the procedure is performed.**

**(iii) *Personal supervision* means a physician must be in attendance in the room during the performance of the procedure.**

---

[3] It is critical to note again that the "misrepresentation" alleged by GEICO in every claim at issue is that Dr. Feijoo or Dr. Nodarse's name appeared in box 31 of this form.  (ECF 1, ¶296).

According to the CFR, "incident to" services "must be furnished under *at least* a general level of physician supervision as defined" in the statute.  By referring generally to this portion of the CFR and eliminating the word "directly" in the first clause of the second sentence regarding box 31 of the HCFA, the Medicare Manual appears to be stating that a physician providing *at least* a general level of supervision may still appropriately bill for services provided by "nonphysician personnel" so long as he accepts responsibility for their training and equipment and it is provided under his "overall direction and control."   GEICO admits that Dr. Marquez did this much by agreeing to act as the Medical Director at Miami Medical Health, and further that Dr. Feijoo and Dr. Nodarse actually conducted examinations and prescribed the treatment billed in every instance.

GEICO's narrow legal conclusion is that the *only* circumstance under which a doctor's name may be truthfully inserted in box 31 for "incident to" services rendered by nonphysician personnel is if the doctor was in the same room the entire time the services were provided.  According to GEICO, even if Dr. Marquez, Dr. Feijoo and/or Dr. Nodarse were in the room/office suite for some portion of the time and/or always immediately available to personally consult within a few minutes of being called, and even if the doctors were reviewing Miami Medical's records and bills on a regular basis, Miami Medical was not permitted to place the doctor's name in box 31 of HCFA bills.[4]  GEICO's *fraud* accusation alleges that this narrow legal conclusion is so obviously the law that Miami Medical and its people knew they were committing *criminal fraud* by placing the doctor's name in box 31 of HCFA forms.

---

[4] Here it is important to note that GEICO only broadly alleges that Dr. Feijoo and Dr. Nodarse could not both have been in the same room at the same time as every one of the 23,000plus physical therapy services were provided. GEICO provides no facts to support that at least one of them was not always present within the office when each service was provided.

But GEICO's bald legal conclusion is presented as if it is hornbook law without citation to caselaw or any statute that specifically stands for it.  The obscure and inconsistent mention in a two sentence blurb from a Medicare Processing Manual, which actually refers to *3 different kinds of supervision,* taken in conjunction with multiple state and federal statutes, is not reliable authority for the proposition that a doctor must physically be in the room while "incident to services" are performed by nonphysician assistants in order for the physician's name to be inserted into box 31 of a HCFA form billing for the services.

The plausibility of GEICO's fraud accusation is tethered completely to its very narrow, complex, and technical legal conclusion.  Every single "fact" GEICO offers to argue fraud is designed solely to show that the doctors did not provide contemporaneous, in-room supervision of every individual service allegedly at issue.

While GEICO's "facts" may support a plausible inference that Dr. Marquez, Dr. Feijoo and/or Dr. Nodarse was not standing in the same room for the entire time that every one of the 23,636 services billed were performed, GEICO offers no facts which plausibly demonstrate the level of supervision any one of the doctors *actually provided* over these services.  It offers no facts to plausibly suggest that each doctor was not providing at least a <u>general</u> level of supervision.

The absence of any allegation as to the level of supervision the doctors actually provided is alone fatal to GEICO's claim.  This is because all of its facts are offered to support the plausibility of just its narrow legal conclusion.  In other words, by alleging facts which only support its own narrow legal conclusion, GEICO has, at best, alleged "the **mere possibility**" that it is entitled to the relief it seeks.  <u>Pavic v. Laser Spine Inst., LLC</u>, *infra*. at *1.

Note that GEICO's failure to allege facts concerning the level of supervision the doctors actually provided cannot be the result of not knowing them.  GEICO alleges in paragraph 882 that

**"The Defendants have hired law firms to pursue collection of the fraudulent charges for the Fraudulent Services from GEICO and other insurers. These law firms routinely file expensive and time-consuming litigation against GEICO and other insurers if the charges are not promptly paid in full."**

Given all of this allegedly routine "expensive and time-consuming litigation" seeking "collection of the fraudulent charges" by the Defendants, there <u>must</u> be a plethora of pleadings, deposition testimony, and discovery documents (not to mention summary judgment motions/orders) which directly reveal the *actual level of supervision* the doctors provided over the services which are the subject of the allegedly fraudulent charges. GEICO must have reams of information at this point about where each doctor *actually was* and what each doctor was *actually doing* on any given day over the course of the last several years when these services were rendered. Yet GEICO offers the Court nothing in this regard and limits its factual allegations to those which suggest only that it is "improbable" each doctor was physically present as every service billed was rendered.

GEICO's vagueness is clearly intentional. For example, despite clearly not being concerned with an economy of words, the best GEICO musters to suggest that Dr. Nodarse could not have been physically present for each service billed under her name is paragraph 300, wherein GEICO states: "What is more, in keeping with the fact that Nodarse was only occasionally physically present at Miami Medical, simultaneous to her 'employment' at Miami Medical, Nodarse was simultaneously purporting to provide a *massive* amount of physical therapy services *at another health care clinic in Florida*." (emphasis added).

Why is GEICO being so vague on such a critical point? Why not add a few more paragraphs describing what exactly is this "massive" amount of services and exactly where is this mysterious

other clinic?  The answers are obvious.  GEICO knows that its narrow legal conclusion is exposed as absurd if were to acknowledge that the number of services provided by Dr. Nodarse at another location are in fact extremely limited and that the other clinic is within a stone's throw of Miami Medical's office.  GEICO's claim that Dr. Nodarse was trying to commit criminal fraud would be entirely undercut if GEICO were to admit such facts, so it carefully crafts its pleading to avoid them in order to paint a false picture.

In short, GEICO has offered a naked legal opinion that the *only* way a licensed physician may properly bill under his/her name for "incident to" services provided by nonphysician personnel, regardless of what those services may be, is if he/she was in the room when the service was performed.  If this legal conclusion is wrong, however, then GEICO has not even alleged a single false representation (much less fraud).

Moreover, if it is a reasonable interpretation of the byzantine layers of statutes and regulations which apply here that a general level of supervision also permits a licensed medical doctor to bill for "incident to" services performed by nonphysician personnel, then GEICO has clearly failed to state a plausible claim that Defendants *knowingly* submitted any false bills.

The scienter component of GEICO's fraud claim, consisting as it does of interpreting Medicare guidelines for the proper submission of bills, is most analogous to those most often made in the context of the False Claims Act.  The universal holding in evaluating the viability of such claims is that "if the defendant's interpretation of a statute or regulation was reasonable, and "*if there is no authoritative contrary interpretation*" of the rule, the relator cannot satisfy the knowledge requirement under the False Claims Act.  United States v. Space Coast Med. Assocs., L.L.P., 94 F. Supp. 3d 1250, 1262–63 (M.D. Fla. 2015)(collecting cases).

GEICO cannot and does not cite to any <u>authoritative interpretation</u> of the PIP statute which defines the level of supervision a licensed *physician* must provide over nonphysician personnel in order to bill for their services under the physician's name.[5]  But even if GEICO's opinion in this regard is correct, GEICO has failed to allege any facts which plausibly demonstrate that the Miami Medical defendants *knew they were doing anything wrong.*

Therefore, even if the Court were to credit GEICO with having plausibly alleged that Dr. Feijoo and/or Dr. Nodarse's name appearing in box 31 of the HCFA forms was actually *incorrect* under Florida law, it has still failed to plausibly allege that any such submission was "knowingly" false.  GEICO points to no notifications provided to Miami Medical, no correspondence, not even any denials of payment, in which GEICO or any other insurer suggested that the manner of Miami Medical's billing was incorrect.

Simply put, the very *most* GEICO has alleged here is a dispute about the technical accuracy of bills.  It has alleged no facts which plausibly suggest that any inaccuracy was *intentional*.

**D.**     **GEICO'S FDUTPA and Unjust Enrichment Claims Cannot Survive the Complaint's Absence of Plausibility**

GEICO will likely argue that its claims under the FDUTPA statute (§501.201 et. seq.) and Unjust Enrichment can ultimately succeed even in the absence of intentional fraud.  This does not, however, save the claims from the heightened pleading requirements for a fraud claim.

On June 3, 2019, Chief Judge Moore of the Southern District of Florida dismissed a claim by State Farm alleging FDUTPA violations as the result of a physician's submissions of allegedly incorrectly coded bills, and did so pursuant to the heightened pleading requirements for fraud. State Farm argued that it need not prove fraud to prevail at trial on its FDUTPA claim.  Judge

---

[5] Along these lines it is worth noting that indirect supervision is expressly allowed by Florida law for chiropractors (such as Dr. Nodarse) over registered chiropractic assistants (such as Yara Vazquez) performing essentially the same services which are at issue in this case.  <u>See</u> Fla. Sta. §460.4165.

Moore rejected this argument.  (See Judge Moore's Memorandum in <u>State Farm v. Feijoo</u>, et. al., 18-cv-23329, ECF Doc. #56).  This same reasoning obviously applies equally to GEICO's unjust enrichment claim, as it, too, is based upon an alleged unified course of fraudulent conduct.[6]

The implausibility of GEICO's FDUTPA claim in this case is demonstrated by its *admitted* failure to conduct itself as a reasonable consumer would have under the same circumstances. <u>Cluck-U Chicken, Inc. v. Cluck-U Corp.</u>, , 2017 WL 10275957, at *9 (M.D. Fla. June 6, 2017), *citing* <u>Cold Stone Creamery, Inc. v. Lenora Foods I, LLC</u>, 332 F. App'x 565, 567 (11th Cir. 2009). GEICO's own Complaint establishes that a consumer acting reasonably in the same circumstances would not have been deceived by either Dr. Feijoo or Dr. Nodarse's name appearing in box 31 of the HCFA forms submitted by Miami Medical.

The only way GEICO *could* possibly have been "deceived" by either doctor's name appearing in box 31 of the HCFA forms submitted by Miami Medical is if it paid the bills without ever reviewing them, given GEICO's admission that every HCFA bill for therapy was accompanied by a therapy note signed by the person who performed the therapy being billed.  Not only was GEICO's *not* the conduct of a reasonable "consumer," such deliberate myopia directly violates the very statutory scheme with which GEICO seeks to blanket itself.

**E.      GEICO Cannot Cherry-pick Only the Portions of Statutes it Likes**

As detailed above, GEICO weaves together portions of various state and federal statutes and secondary sources to conjure a legal conclusion on which it bases its allegation of fraud.  Yet,

---

[6] *See also* <u>Space Coast Credit Union v. Merrill Lynch, Pierce, Fenner & Smith Inc.</u>, 295 F.R.D. 540, 545 (S.D. Fla. 2013), *citing* <u>United States ex rel. Citizens United to Reduce & Block Fed. Fraud, Inc. v. Metro. Med. Ctr.</u>, No. 89–0592–CIV, 1990 WL 10519617, at *3 (S.D.Fla. Jan. 11, 1990) (holding that unjust-enrichment claim based on "fraudulent taking of money … must satisfy Rule 9(b)").

tellingly, GEICO leaves on the cutting room floor large swaths of the statutes which directly clash with the strait jacket GEICO is trying to force upon every medical clinic in Florida.

For example, the CFR contains "Documentation and Recordkeeping Requirements" which clearly contemplate that the payor (be it the federal government or an insurer) will scrutinize documentation submitted alongside a HCFA form and individually determine whether the treatment being billed was reasonable, necessary, and otherwise compliant with the requirements of the statute, *before* issuing payment.  <u>See</u> 42 C.F.R. § 410.32(d)(2).

 This portion of the CFR tracks provisions of Florida's PIP statute which also clearly contemplate that insurers will actually review documentation of services provided *before* issuing payment.  Consider § 627.736(6)(b) and § 627.736(4)(i), which detail specific recourse for insurers any time they believe a bill has not been submitted with sufficient documentation to justify payment.[7]

Despite the clear expectation that payors will actually review supporting documentation of services before issuing payment, the plausibility of GEICO's fraud claim is entirely dependent upon its having done no such thing.  GEICO claims to have been "defrauded" by documentation its own Complaint describes as so facially deficient that no one could possibly have reviewed them and believed they reflected reimbursable care.  (<u>See</u> ECF 1, ¶328-331).  But GEICO points merely to the information contained in the records which were originally submitted as the sole basis for its accusation, rendering it wholly illogical.

With its circular "facts" GEICO locks itself in an implausible box.  The only way GEICO could possibly have been "defrauded" by Miami Medical's bills is if it never looked at them in the

---

[7] This recourse includes that provided in § 627.736(6)(b)(1)(e), which expressly allows an insurer to deny payment of any charge it feels has been inappropriately upcoded or unbundled as GEICO.

first place.  This of course destroys any plausible pretense to "justifiable reliance,"[8] and further, fails to meet the requirements of Rule 9.  In order to pass muster thereunder, a Plaintiff must not only describe the author, date, and content of alleged misrepresentations, it must specifically allege **the manner in which they misled the plaintiff**.  Johnson Controls, Inc. v. Uribazo, 2012 WL 6652934, at *2 (S.D. Fla. Dec. 21, 2012)(internal citations omitted).  According to GEICO's own Complaint, however, the only manner in which it could possibly have been misled by Defendants' bills and records is *by not looking at them*.

## II.    GEICO ALLEGES NO FACTS AGAINST YARA VAZQUEZ OR HAI UZAN IMPLICATING THEM IN ANY FRAUD

Should the Court not dismiss the Complaint in its entirety, it is respectfully submitted that GEICO's RICO and Common Law Fraud claims against Yara Vazquez and Hai Uzan should be dismissed for lack of particularity.

The only specific allegation made against Ms. Vazquez and Mr. Uzan is that they provided a limited range of healthcare services and created *accurate* notes thereof.  There is not a single averment of fact offered to support GEICO's allegation that Ms. Vazquez ever made a single false representation of any kind, or had any role in or responsibility for creating and submitting the HCFA forms which constitute the sum total of allegedly false statements made to GEICO.

Having failed to allege any facts supporting its allegation that Ms. Vazquez or Mr. Uzan made any false statements or knowingly participated in any aspect of billing, none of GEICO's causes of action against either of them are stated with the required particularity and must be dismissed as to them individually. *See* Brooks v. Blue Cross and Blue Shield of Florida, Inc., 116

---

[8] See Urdaneta v. JP Morgan Chase Bank, N.A., 2010 WL 11504729, at *3–4 (S.D. Fla. Jan. 22, 2010)(The recipient of a fraudulent misrepresentation is not justified in relying upon its truth if he knows that it is false or its falsity is obvious to him).

F.3d 1364, 1380–81(11th Cir.1997)("[I]n a case involving multiple defendants ... the complaint should inform each defendant of the nature of his alleged participation in the fraud.").

## IiI.   IF ALLOWED TO PROCEED, GEICO MUST PROVIDE A MORE DEFINITE STATEMENT

Exhibit 5 to GEICO's Complaint purports to identify 23,636 individual services provided at Miami Medical, each one of which it alleges to have been fraudulently billed.  However, in characterizing the fraud alleged to have been committed with respect to each of these services, GEICO repeatedly adds the caveats "in many cases" and "to the extent they were provided at all." (See Complaint generally).  These caveats create multiple theories of fraud with respect to each date of service and render the entire Complaint insufficiently specific. *See* Urdaneta v. JP Morgan Chase Bank, N.A., 2010 WL 11504729, at \*2 (S.D. Fla. Jan. 22, 2010)("By proposing alternative theories, Plaintiffs fail to state their fraud claim with specificity.").

Accordingly, should the Court find that GEICO's claim may proceed, it is respectfully requested that GEICO be ordered to provide a more definite statement as to which specific treatments listed on Exhibit 5 it is alleging were not actually provided.

## III.   CONCLUSION

GEICO's motive to manufacture a federal fraud case out of a technical PIP billing dispute is transparent.  GEICO feels its bottom line is disadvantaged by the statutory PIP scheme actually enacted by the Florida legislature and overseen by state courts.  All it needs to do in order to effectively create the PIP scheme it prefers is let every medical provider in Florida know they will be professionally and personally ruined by a massive federal lawsuit accusing them of criminal fraud unless they hew to *GEICO's* standard.  Rules 8 and 9 are the only protection against such blatant abuses and GEICO's Complaint should be dismissed in its entirety.

Respectfully Submitted,


/s/ Kenneth Schurr
Kenneth Schurr, Esq.
2030 S. Douglas Rd.
Coral Gables, FLA  33134

Andrew P. Baratta (Pa. Bar No. 82250)
*Pro Hac Vice Pending*
Baratta, Russell & Baratta
3500 Reading Way
Huntingdon Valley, Pa.  19006
215-914-2222
215-914-2118 (facsimile)
andrew@barattarussell.com