## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### Case No.:  20-cv-22044-MARTINEZ/OTAZO-REYES

GOVERNMENT EMPLOYEES INSURANCE
CO., GEICO INDEMNITY CO., GEICO
GENERAL INSURANCE COMPANY and
GEICO CASUALTY CO.,

      Plaintiffs,

vs.

MANUEL FEIJOO, M.D., MANUEL V.
FEIJOO, M.D. P.A., WE CARE MEDICAL
SERVICES, INC, MANUEL MARTINEZ
VARELA, TONY NGUYEN, D.O., NEW LIFE
CLINICAL SERVICES, INC, ALEAN
MACHADO, JOSE ESTEVEZ, YOANDRA
RODRIGUEZ, ACCIDENT REHAB
ASSOCIATES INC, d/b/a AMERICAN
MEDICAL & REHAB CENTER,
ALEJANDRO VAZQUEZ, MARIA
VAZQUEZ, ERICK SALADO, M.D., MIAMI
MEDICAL GROUP, INC, JUAN JIMENEZ,
GRACIELA JIMENEZ, JOSE MARQUEZ,
M.D., MARIA NODARSE, D.C., YARA
VAZQUEZ, and HAI UZAN,

      Defendants.

_____/

### PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND ALTERNATIVE MOTION FOR A MORE DEFINITE STATEMENT

Plaintiffs, Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co. (collectively "GEICO" or "Plaintiffs") respectfully submit this memorandum in opposition to the motion by Defendants Miami Medical Group, Inc. ("Miami Medical"), Juan Jimenez ("J. Jimenez"), Graciela Jimenez ("G. Jimenez"), Jose Marquez M.D. ("Marquez"), Maria Nodarse, D.C. ("Nodarse"), Yara Vazquez ("Vazquez"), and Hai Uzan ("Uzan")(collectively the "Miami Medical Defendants"), to dismiss Plaintiffs' Complaint or, in

the alternative, for a more definite statement pursuant to Fed. R. Civ. P. 12(e). See Docket No. 24.[1]

## SUMMARY

In its very detailed Complaint, GEICO alleges – in substance – that the Miami Medical Defendants, together with their co-Defendant Manuel Feijoo M.D. ("Feijoo"), submitted, or caused to be submitted, a massive amount of fraudulent no-fault ("no-fault", "personal injury protection", or "PIP") insurance billing through Miami Medical to GEICO in violation of the Florida Health Care Clinic Act, Fla. Stat. § 400.990 et seq. (the "Clinic Act"). See Docket No. 1, ¶¶ 1-80, 139-156, 285-331, 358-363, 701-872, and 873-884.[2]

As discussed below, the Miami Medical Defendants' arguments for dismissal ignore the detailed facts set forth in the Complaint and are at odds with the pertinent law, including the law that has developed in numerous, highly analogous no-fault insurance ("personal injury protection" or "PIP") fraud cases in the 11th Circuit, in Florida state appellate courts, and across the country.

Aside from their misleading recharacterization of GEICO's allegations, the Miami Medical Defendants' motion relies on an equally inaccurate interpretation of the pertinent law – including a number of legal contentions that repeatedly have been raised in the past by defendants in

---

[1] To the extent that the Miami Medical Defendants' motion seeks a more definite statement, the Miami Medical Defendants failed to comply with Local Rule 7.1(a)(3). Local Rule 7.1(a)(3) requires a party contemplating a motion for a more definite statement to confer – or at least make a reasonable effort to confer – with the opposing party "in a good-faith effort to resolve by agreement the issues to be raised in the motion." The Miami Medical Defendants did not contact Plaintiffs in any manner to discuss their supposed need for a more definite statement, as confirmed by the fact that the Miami Medical Defendants' motion fails to include the certification required by Local Rule 7.1(a)(3).  Standing alone, this warrants denial of their motion to the extent that it seeks a more definite statement. See, e.g., Local Rule 7.1(a)(3); see also Government Employees Ins. Co., et al. v. Alternative Medical Center of Florida, Inc., et al., S.D. Fla Case No. 1:17-cv-21375-RNS, at Docket No. 17, pp. 2-3 (in extremely similar federal PIP fraud action, denying the defendants' motion for a more definite statement where the defendants "failed to comply with Local Rule 7.1(a)(3), requiring that parties confer before filing a motion … for a more definite statement.")

[2] These allegations are not pleaded in a conclusory vacuum, either. Rather, the Complaint sets forth numerous, claim-specific examples of the Miami Medical Defendants' fraudulent misrepresentations and acts of fraudulent concealment, detailing the "who, what, when, where, and why" of a large number of the Miami Medical Defendants' discrete fraudulent acts. See Docket No. 1, ¶¶ 1-80, 139-156, 285-331, 358-363, 701-872, and 873-884, passim.

substantially similar no-fault insurance fraud cases, and repeatedly rejected by the federal courts, including this Court. Indeed, the Miami Medical Defendants somehow manage to avoid citing to any of the many federal (and Florida appellate) decisions – in substantially similar anti-PIP fraud cases, including decisions by this Court – that decisively refute every one of their arguments. As discussed herein, the Miami Medical Defendants' motion to dismiss therefore should be denied in its entirety.

## **BACKGROUND**

GEICO commenced this action on May 15, 2020. See Docket No. 1. Because it is impossible to describe every aspect of the very detailed Complaint in a relatively brief memorandum of law, GEICO respectfully refers the Court to the Complaint for the full contours of Defendants' interrelated fraudulent schemes.

Briefly, however, the following is a summary:

(i)     Pursuant to the Florida Motor Vehicle No-Fault Law (the "No-Fault Law"), in order for a healthcare service to be eligible for PIP reimbursement in Florida, it must be "lawfully provided", meaning that it must be provided "in substantial compliance with all relevant applicable criminal, civil, and administrative requirements of state and federal law related to the provision of medical services or treatment." See Docket No. 1, ¶¶ 43-48, citing Fla. Stat. §§ 627.732, 627.736.

(ii)    Pursuant to the Florida Health Care Clinic Act (the "Clinic Act"), clinics operating in Florida must – among other things – "appoint a medical director … who shall agree in writing to accept legal responsibility for [certain enumerated] activities on behalf of the clinic." See Docket No. 1, ¶¶ 49-58, citing Fla. Stat. § 400.9935(1). Among other things, a clinic medical director must "[c]onduct systematic reviews of clinic billings to ensure that the billings are not fraudulent or unlawful. Upon discovery of an unlawful charge, the medical director … shall take immediate corrective action." Id. In addition, a clinic medical director must "[e]nsure that all practitioners providing health care services or supplies to patients maintain a current active and unencumbered Florida license", and "[e]nsure that all health care practitioners at the clinic have active appropriate certification or licensure for the level of care being provided." Id. Healthcare clinics that operate in violation of the Clinic Act's medical director or other operating requirements are not eligible to collect PIP insurance benefits. Id., citing See Fla. Stat. § 400.9935(3).

(iii)   Thus, pursuant to both the Florida No-Fault Law and the Clinic Act, clinics that operate in violation of the Clinic Act's medical director requirements are not entitled to collect PIP insurance benefits, whether or not the underlying healthcare services were medically necessary or actually provided. See Docket No. 1, ¶¶ 43-58, see also Allstate Ins. Co. v. Vizcay, 826 F.3d 1326, 1330-1331 (11th Cir. 2016); State Farm Mut. Auto. Ins. Co. v. B&A Diagnostic, Inc., 145 F. Supp. 3d 1154, 1164-1165 (S.D. Fla. 2015).

(iv)    Pursuant to Florida's No-Fault Law, insurers such as GEICO are only required to pay PIP insurance benefits for medically necessary services. <u>See</u> Fla. Stat. § 627.736. Concomitantly, a healthcare services provider, including a clinic organized under the Clinic Act, is only eligible to receive PIP benefits for medically necessary services. <u>See</u> Docket No. 1, ¶¶ 69-70.

(v)    Pursuant to Florida's No-Fault Law, insurers such as GEICO also are not required to pay PIP benefits (a) for any service or treatment that is "upcoded", meaning that it is billed using a billing code that would result in payment greater in amount than would be paid for a billing code that accurately described the services performed; (b) to any person who knowingly submits a false or misleading statement relating to the claim or charges; or (c) with respect to a bill or statement that does not substantially meet the billing requirements set forth in the No-Fault Law, including the requirement that the individual who personally performed or directly supervised the underlying healthcare service be identified on the bill. <u>See</u> Docket No. 1, ¶¶ 79-80, 185-189, and <u>passim</u>; <u>see</u> <u>also</u> Fla. Stat. § 627.736(5)(b)(1).

(vi)    In response to widespread PIP insurance fraud involving massage services and massage therapists, Florida's no-fault insurance law was amended, effective January 1, 2013, to prohibit PIP reimbursement for massage or for services provided by unsupervised massage therapists. <u>See</u> Docket No. 1, ¶¶ 71-74; <u>see</u> <u>also</u> 2012 Fla. ALS 197 and Fla. Stat. § 627.736(1)(a)(5). In this context, pursuant to Fla. Stat. § 486.028, massage therapists may not practice physical therapy, or hold themselves out as being able to practice physical therapy, unless they have an actual license to practice <u>physical therapy</u>, as opposed to <u>massage therapy</u>. <u>Id</u>. Similarly, chiropractic assistants also lack the necessary license to perform physical therapy services without supervision. <u>See</u> Docket No. 1, ¶¶ 75-78.

(vii)    J. Jimenez and G. Jimenez owned Miami Medical, and wanted to use Miami Medical – which was health care clinic – as a vehicle to submit a large volume of fraudulent PIP billing to GEICO and other insurers. <u>See</u> Docket No. 1, ¶¶ 139-156. However, J. Jimenez and G. Jimenez knew that if they recruited a legitimate physician to serve as Miami Medical's legitimate medical director, any such physician would have to fulfill their statutory role as medical director, and would impede J. Jimenez and G. Jimenez's ability to use Miami Medical as a vehicle to submit fraudulent billing to GEICO and other insurers. <u>Id</u>. Accordingly, J. Jimenez and G. Jimenez recruited Marquez to falsely pose as medical director at Miami Medical. <u>Id</u>. In fact, Marquez did not legitimately fulfill his statutory duties as medical director, and instead unlawfully ceded day-to-day decision-making and oversight regarding healthcare services at Miami Medical, and the resulting billing, to J. Jimenez and G. Jimenez. <u>Id</u>.

(viii)    The vast majority of the healthcare services that were billed through Miami Medical to GEICO were purported physical therapy services. <u>See</u> Docket No. 1, ¶¶ 285-331. Miami Medical, J. Jimenez, G. Jimenez, Marquez, Nodarse, and Feijoo knew that, effective January 1, 2013, they could not bill GEICO for services performed

4

without supervision by G. Jimenez, Vazquez, and Uzan, who were massage therapists and/or chiropractic assistants. Id., ¶¶ 285-331.

(ix)    Accordingly – to conceal the fact that they were billing GEICO for services provided by unsupervised massage therapists and/or chiropractic assistants, including G. Jimenez, Vazquez, and Uzan – Miami Medical, J. Jimenez, G. Jimenez, Marquez, Nodarse, and Feijoo falsely represented, in all of the billing they submitted to GEICO for purported physical therapy services, that the pertinent services had been performed, or at least directly supervised, by Feijoo and/or Nodarse, and therefore were eligible for PIP reimbursement. Id., ¶¶ 285-331. In fact, the purported physical therapy services actually were performed by unlicensed massage therapists and/or chiropractic assistants (to the extent that they were performed at all), without any supervision by Feijoo, Nodarse, or any other licensed physician, chiropractor, or physical therapist, and therefore were not eligible for PIP reimbursement. Id.

(x)     What is more, GEICO's Complaint sets forth considerable, detailed facts to demonstrate that the Miami Medical Defendants routinely billed GEICO for medically unnecessary services or services that never actually were provided at all. See Docket No. 1, ¶¶ 701-872. These facts include: (a) numerous, claim-specific examples of instances in which the Miami Medical Defendants billed GEICO for relatively complex, lengthy, and detailed patient examinations, when in fact the examinations – to the extent that they were performed at all – were brief and perfunctory, with pre-determined and phony outcomes; (b) numerous claim-specific examples of instances in which two or more patients who were involved in the same accident "just happened" to present at Miami Medical on the exact same date after their accident, at which point Feijoo and/or Nodarse purported to examine them, gave them substantially identical phony "diagnoses", and recommended a substantially identical, medically unnecessary "treatment plan" to them, despite the fact that the patients were differently situated; and (c) detailed allegations to demonstrate that the Miami Medical Defendants billed for the exact same types of medically unnecessary physical therapy services for virtually every patient, without regard for the patients' true individual circumstances or presentation Id., passim.

At bottom – and as alleged in granular detail in the Complaint – GEICO alleges that the Miami Medical Defendants pervasively billed inflated amounts for medically unnecessary and illusory services, unlawfully misrepresented the identities of the actual service providers, and concealed the fact that they were unlawfully billing GEICO for "physical therapy" services that were performed – to the extent that they were performed at all – by unsupervised massage

therapists and/or chiropractic assistants, including G. Jimenez, Vazquez, and Uzan. See Docket No. 1, ¶¶ 1-80, 139-156, 151, 285-331, 701-872, 783-915, and 873-884, and passim.[3]

Relatedly, GEICO alleges that Defendant Marquez never legitimately served as Miami Medical's medical director because, had he done so, he would have observed and put an end to the pervasive fraud and unlawful activity. See Docket No. 1, ¶¶ 139-156, 285-331, 701-872, 783-915, 1019-1020, and passim. By extension, GEICO alleges that all of the Miami Medical Defendants' PIP billing falsely represented that Miami Medical was eligible to receive PIP reimbursement, when in fact Miami Medical was not eligible to receive PIP reimbursement because – in violation of the Clinic Act– it operated without a legitimate medical director who legitimately fulfilled his statutory duties as a clinic medical director. Id.

Based on these allegations – which are pleaded in exacting detail, with many claim-specific examples of the Miami Medical Defendants' fraudulent and unlawful activity – GEICO asserts claims against the Miami Medical Defendants for, variously, civil RICO violations under 18 U.S.C. § 1962(c) and (d), violation of the Florida Deceptive and Unfair Trade Practices Act (the "FDUTPA"), violation of the Florida Civil Remedies for Criminal Practices Act (the "FCRCPA"), common law fraud, and unjust enrichment. Through these claims, GEICO seeks to recover the more than $1,400,000 it already has paid on the fraudulent billing that the Miami Medical Defendants submitted, or caused to be submitted, through Miami Medical. See Docket No. 1, ¶¶ 1082-1133. In addition, GEICO seeks a declaratory judgment to the effect that it is not liable to pay any of the more than $75,000.00 in outstanding and unpaid billing that the Miami Medical Defendants submitted through Miami Medical, because of the fraud and unlawful conduct alleged in the Complaint. See Docket No. 1, ¶¶ 885-888.

## ARGUMENT

I.  **The Miami Medical Defendants' Motion Should be Denied to the Extent That it Seeks Dismissal of Plaintiffs' Complaint Pursuant to Rule 12(b)(6)**

As discussed below, none of the Miami Medical Defendants' arguments for dismissal has any merit. Indeed, virtually identical anti-PIP fraud complaints asserting identical causes of action

---

[3] As explained with great particularity in the Complaint, neither Feijoo nor Nodarse could possibly have performed or even supervised such a massive volume of "physical therapy" services, especially in light of their super-crowded work schedules. See Docket No. 1, passim.

– and even anti- PIP fraud complaints with a substantially lesser amount of detail – repeatedly have been held sufficient by federal courts, both within and outside of the Eleventh Circuit.

A.    **Though the Miami Medical Defendants Attempt to Mischaracterize GEICO's Allegations and the Pertinent Law Regarding Feijoo and Nodarse's Failure to Supervise G. Jimenez, Vazquez, Uzan, and other Massage Therapists and/or Chiropractic Assistants, GEICO's <u>Actual</u> Allegations are Legally Sufficient and Totally Plausible**

As set forth in GEICO's Complaint, and as summarized above, Miami Medical, J. Jimenez, G. Jimenez, Marquez, Feijoo, Nodarse, Vazquez, and Uzan unlawfully billed GEICO for putative "physical therapy" services that were performed – to the extent that they were performed at all – by G. Jimenez, Vazquez, Uzan, and other massage therapists and/or chiropractic assistants, who were unsupervised and who held no physical therapy licenses. To make it appear as if the services were eligible for PIP reimbursement, Miami Medical, J. Jimenez, G. Jimenez, Marquez, Feijoo, Nodarse, Vazquez, and Uzan falsely represented – in their billing for the services – that Feijoo and/or Nodarse personally performed or directly supervised the "physical therapy" services, which made it appear as if the purported services were eligible for PIP reimbursement, when in fact they were not. In fact – and as set forth in detail in GEICO's Complaint – neither Feijoo nor Nodarse could possibly have performed or even supervised the "physical therapy" services that were billed through Miami Medical to GEICO, especially considering their incredibly crowded work schedules and the superhuman amount of individual healthcare services that they both purported to perform on individual dates. <u>See</u> Docket No. 1, ¶¶ 139-156, 285-331, and <u>passim</u>.

In an attempt to rebut GEICO's claims, the Miami Medical Defendants embark on a tortured analysis of the PIP statute and the Medicare Claims Processing Manual (the "Medicare Manual"). <u>See</u> Docket No. 24, pp. 9-16, and <u>passim</u>. Though it is difficult to follow their argument, the Miami Medical Defendants appear to contend that it was totally lawful for them to represent – in their billing for the "physical therapy" services – that Feijoo and Nodarse supervised the services, because Feijoo and Nodarse supposedly provided some level of "general" or indirect supervision to G. Jimenez, Vazquez, Uzan, and other massage therapists and/or chiropractic assistants who performed the "physical therapy" services at Miami Medical. <u>See id</u>.

If this is what the Miami Medical Defendants are driving at, they are incorrect. First, and most generally, the Miami Medical Defendants' argument is at odds with the actual allegations in the Complaint, which are entitled to every favorable inference on this motion to dismiss. GEICO

not only alleges that Feijoo and Nodarse failed to "directly" supervise the purported physical therapy services, but GEICO very plausibly alleges that Feijoo and Nodarse failed to provide <u>any</u> supervision with respect to the purported physical therapy services. <u>See</u> Docket No. 1, ¶¶ 285-331. Indeed, GEICO alleges detailed facts to demonstrate that Feijoo – who was purporting to work a superhumanly-crowded schedule, typically at multiple locations, on the same dates when he was purporting to oversee massive amounts of "physical therapy" at Miami Medical – could not possibly have supervised <u>any</u> of the purported physical therapy at Miami Medical. Likewise, GEICO alleges detailed facts to demonstrate that Nodarse also purported to work a superhumanly-crowded schedule – including at another health care clinic in addition to Miami Medical – on the same dates when she was purporting to oversee massive amounts of "physical therapy" at Miami Medical, and therefore could not possibly have supervised <u>any</u> of the purported physical therapy at Miami Medical[4] <u>Id</u>.   Accordingly, the Miami Medical Defendants' "direct vs. general" supervision argument is a red herring.[5]

---

[4] The Miami Medical Defendants somehow assert that GEICO was deliberately vague in its allegations concerning the amount of services Nodarse purported to perform at Miami Medical and another health care clinic in Florida. <u>See</u> Docket No. 24, p.14-15. Contrary to this conclusory and baseless assertion, GEICO supported its allegations concerning the amount of healthcare services Nodarse purported to perform with granular detail. For instance, GEICO provided numerous detailed examples in which Nodarse purported to provide between <u>at least</u> 11 and 25 hours of health care services in a given day <u>to GEICO insureds, alone</u>, and specified where Nodarse purported to provide these massive amounts of healthcare services.  <u>See</u> Docket No. 1, ¶¶ 303 (i-x) . In this context, it is GEICO's detailed allegations – and not the Miami Medical Defendants' conclusory statements – that are entitled to the benefit of every reasonable inference on this motion to dismiss.

[5] The Miami Medical Defendants incorrectly contend that, pursuant to Florida Law, "indirect supervision is expressly allowed for chiropractors (such as Nodarse) over registered chiropractic assistants(such as Yara Vazquez)." <u>See</u> Docket No. 24, p.16, fn. 5. This is false. It appears the Miami Medical Defendants confuse the supervision requirements necessary for a chiropractic assistant with that of a *certified chiropractic physician assistant (emphasis added)*. While, in certain limited instances, Florida law allows for a chiropractor to provide only "indirect supervision" over services provided by a *certified chiropractic physician assistant* (<u>see</u> Fla. Sta. § 460.4165), that is not so for a *chiropractic assistant*. Indeed, as set forth in GEICO's Complaint, (<u>see</u> Docket No. 1 ¶¶ 75-78), Florida law expressly requires a chiropractor, such as Nodarse, to "directly" supervise services provided by a chiropractic assistant. <u>See</u> Fla. Stat. § 460.4166(2). In this context, Vazquez is <u>only</u> licensed as a chiropractic assistant, not as a certified chiropractic assistant and thus Nodarse was required to "directly supervise" Vazquez. In any case, GEICO very plausibly alleges that Nodarse did not supervise Vazquez <u>at all</u>.

Second, and in any case, the Miami Medical Defendants' strained analysis of the PIP statute and the Medicare Manual is at odds with the plain language of the Medicare Manual and the relevant law. As set forth in GEICO's Complaint, the Miami Medical Defendants billed for all of their purported "physical therapy" services using HCFA-1500 forms, which had to be completed in accordance with the Medicare guidelines. See Docket No. 1, ¶¶ 44, 80, 285-331, and passim. Pursuant to the instructions promulgated by the Centers for Medicare & Medicaid Services for the completion of HCFA-1500 forms, to the extent that a physician is not actually "directly supervising" a physical therapy treatment, then the actual name of the person who is actually performing or directly supervising the physical therapy treatment must be listed on the HCFA-1500 form. Id.[6]

Though the Miami Medical Defendants struggle to find some ambiguity in the Medicare Manual, the Medicare Manual and the PIP statute are perfectly clear. So clear, in fact, that: (i) numerous federal courts within the 11th Circuit – including this Court – have sustained identical RICO and other fraud-based claims to the effect that a healthcare clinic billed for "physical therapy" performed by unsupervised masseuses, and then falsely represented in its HCFA-1500 billing that a physician directly (or indirectly) supervised the masseuses; and (ii) the Florida Third District Court of Appeals recently denied PIP reimbursement to a healthcare clinic that falsely listed a physician on HCFA-1500 forms as the "direct supervisor" of purported physical therapy services, and unambiguously held that the Florida PIP statute precludes any reimbursement for any services that are performed by massage therapists. See, e.g., Government Employees Ins. Co., et al. v. Luis Lopez Mas, M.D. et al., S.D. Fla. Case No. 19-cv-21183-KMW, at Docket No. 71, pp. 7-13 (sustaining virtually identical PIP fraud and racketeering claims based on virtually identical allegations to the effect that defendants falsely represented, in their PIP billing, that a

---

[6] See, e.g., Medicare Claims Processing Manual, Chapter 26 – Completing and Processing Form CMS-1500 Data Set, Item 31 (requiring that the "provider" or "supplier" of the underlying healthcare service, or its representative, sign in box 31 of a HCFA-1500 bill, and further providing that "In the case of a service that is provided incident to the service of a physician or nonphysician practitioner, when the ordering physician or non-physician practitioner is directly supervising the service as in 42 CFR 410.32, the signature of the ordering physician or non-physician practitioner shall be entered in item 31. When the ordering physician or non-physician practitioner is not supervising the service, then enter the signature of the physician or non-physician practitioner providing the direct supervision in item 31.")

physician had supervised the "physical therapy" services at issue, when in fact the services had been performed by unsupervised massage therapists); Gov't Emples. Ins. Co. v. Quality Diagnostic Health Care, Inc., 369 F. Supp. 3d 1292, 1299-1301 (S.D. Fla. 2019)(Martinez, J.)(same)[7]; Government Employees Insurance Co. et al. v. DG Esthetic and Therapy Center, Inc. et al., S.D. Fla. Case No. 1:18-cv-20921-CMA, at Docket Nos. 21, 29, 31 (same); Government Employees Ins. Co., et al. v. Alternative Medical Center of Florida, Inc., et al., S.D. Fla Case No. 1:17-cv-21375-RNS, at Docket No. 17 (same); Gov't Emples. Ins. Co. v. A&C Med. Ctr. Servs., Corp., 2019 U.S. Dist. LEXIS 133568 (S.D. Fla. 2019)(Martinez, J.)(same, although the Court ordered GEICO to file a shorter version of its complaint, and then ordered the Defendants to answer the amended complaint within 10 days – rather than file another motion to dismiss – "[b]ecause the Court rejects Defendants' substantive arguments" for dismissal)[8]; Geico Gen. Ins. Co. v. Beacon Healthcare Ctr. Inc., 2020 Fla. App. LEXIS 2284 (Fla. 3d DCA 2020)("the PIP statute . . . precludes

---

[7] Notably, after this Court denied the Quality Diagnostic defendants' motion to dismiss, it ultimately granted GEICO summary judgment on its fraud, FDUTPA, and unjust enrichment claims. See Gov't Emples. Ins. Co. v. Quality Diagnostic Health Care, 2019 U.S. Dist. LEXIS 220674 (S.D. Fla. 2019). Thereafter, the Quality Diagnostic defendants moved to vacate or alter the judgment. See Quality Diagnostic, S.D. Fla. Case No. 1:18-cv-20101-JEM, at Docket No. 152. In their motion to vacate or alter the judgment, the Quality Diagnostic defendants raised – among other things – the exact same arguments as the Miami Medical Defendants in the present case, to the effect that "direct" supervision by a licensed physician is not required, and a healthcare clinic may lawfully bill for "physical therapy" services performed by a massage therapist, so long as the massage therapist was "indirectly" or generally supervised by a licensed physician. See id., pp. 2-6. GEICO opposed the Quality Diagnostic defendants' motion to vacate or alter the judgment, noting – just as it has in the present case – that there is no legal authority to support that proposition, which in any event is contrary to common sense. See Quality Diagnostic, at Docket No. 163, pp. 12-14. Though this Court ultimately denied the Quality Diagnostic defendants' motion to vacate or alter the judgment because it was procedurally improper, this Court also "agree[d] with Plaintiffs that the Motion is meritless … ." See Quality Diagnostic, at Docket No. 165.

[8] GEICO is aware of the fact that its Complaint in the present case – like its complaint in the A&C Med. Ctr. Case – is lengthy and detailed. GEICO respectfully submits that the length and detail are warranted by: (i) the multifaceted nature of the alleged fraud; (ii) the number of interrelated Defendants; and (iii) the need to plead the fraud-based claims in accordance with Rule 9(b). As set forth herein, numerous courts in the 11th Circuit have sustained PIP fraud and rackeering complaints pleaded in a similar manner, with a similar length and level of detail. However, to the extent that the Court finds it warranted, GEICO is prepared to file a shorter version of its Complaint. If the Court orders GEICO to file a shorter version of the Complaint, GEICO respectfully submits that – as in the A&C Med. Ctr. case – the Court should order the Defendants to answer the Complaint, rather than file further motions to dismiss.

reimbursement [for] massage therapists" who are performing physical therapy services); see also S. Owners Ins. Co. v. Hendrickson, 2020 Fla. App. LEXIS 6631 (Fla. 5th DCA 2020), where the court reached the same conclusion as in Beacon and held that the PIP statute "precludes a licensed massage therapist from being reimbursed for medical benefits". Id. at *2.

Not only is the Miami Medical Defendants' "direct vs. general" supervision at odds with the actual allegations in the Complaint, and the weight of federal authority sustaining virtually identical PIP fraud claims based on virtually identical allegations, but it also is at odds with basic common sense. At bottom, if the Court were to credit the Miami Medical Defendants' "general" or indirect supervision argument, then it would mean that a single physician could stand in the middle of downtown Miami with a cellphone in his or her hand, "generally supervise" hundreds – or even thousands – of individual massage therapists performing physical therapy services within a 20-mile or 30-minute radius of that spot, and have those services be considered part of the physician's practice of medicine, rather than noncompensable massage. This is not the law, and the Court should decline the Miami Medical Defendants' invitation to create such a rule.

**B.      The Miami Medical Defendants' "Reliance" Argument is Meritless**

The Miami Medical Defendants go on to argue that GEICO's Complaint should be dismissed because GEICO did not justifiably rely on any misrepresentations.[9] See Docket No. 24, pp. 18-19 and passim. At bottom, the Miami Medical Defendants posit that, because GEICO supposedly knew (or at least had inquiry notice) that the billing submitted by the Miami Medical Defendants was fraudulent, but paid the charges anyway, GEICO's reliance could not have been justifiable. Id.

---

[9]The Miami Medical Defendants do not articulate which counts they seek to dismiss based on their "justifiable reliance" argument. To the extent the Miami Medical Defendants are using the "justifiable reliance" argument to seek dismissal of GEICO's FDUTPA and unjust enrichment claims, the court should reject this argument because reliance is not an element of FDUTPA or unjust enrichment claims. See, e.g., State Farm Mut. Auto. Ins. Co. v. B&A Diagnostic, Inc., 145 F. Supp. 3d 1154, 1165 (S.D. Fla. 2015)("Under Florida law, the elements of a cause of action for unjust enrichment are: (1) plaintiff conferred a benefit on a defendant who has knowledge of that benefit; (2) defendant accepted and retained the benefit and (3) under the circumstances, it would be inequitable for the defendant to retain the benefit without paying for it.")(Internal quotations and citation omitted); Carriuolo v. GM Co., 823 F.3d 977, 985 (11th Cir. 2016)("[A] plaintiff asserting a FDUTPA claim need not show actual reliance on the representation or omission at issue ….")(Internal quotations and citation omitted).

The Miami Medical Defendants are incorrect, for several reasons. First, and most generally, reliance is a fact-intensive issue that is not properly resolved on a motion to dismiss pursuant to Rule 12(b)(6). See, e.g., Luis Lopez Mas, supra, at Docket No. 71, pp. 14-17 (rejecting identical "reliance" argument, in a substantially similar PIP fraud and racketeering case, and holding that "it is inappropriate at this juncture to decide as a matter of law exactly when GEICO would have been on notice of any fraud, a highly fact intensive inquiry best reserved for a trier of fact at trial.")(Internal quotations omitted); Maze Partners v. First Choice Healthcare Solutions, 2019 U.S. Dist. LEXIS 184611 at * 48 (M.D. Fla. 2019)(element of reasonable reliance ordinarily is a fact-intensive issue not proper for determination as a matter of law at the pleading stage, but one more appropriate for the fact-finder after discovery has developed a sufficient evidentiary record); Doe v. Royal Caribbean Cruises, Ltd., 2011 U.S. Dist. LEXIS 146855 at * 9 (S.D. Fla. 2011)(whether plaintiff's reliance was reasonable in light of the defendant's actions was not a question that could be resolved on a motion to dismiss pursuant to Rule 12(b)(6)). In this context, it would be especially inappropriate to dismiss based on the Miami Medical Defendants' reliance argument, because the argument is predicated on conclusory speculation about what GEICO knew, and when GEICO knew it. In actuality, GEICO has pleaded facts to demonstrate that the Miami Medical Defendants acted to conceal their interrelated fraudulent schemes, that GEICO was under statutory and contractual obligations to promptly and fairly process claims within 30 days, and that the facially-valid documents submitted to GEICO in support of the fraudulent charges at issue, combined with the material misrepresentations and acts of concealment described above, were designed to and did cause GEICO to rely upon them. See Docket No. 1, ¶¶ 875-884, and passim. It is GEICO's detailed allegations – and not the Miami Medical Defendants' conclusory statements – that are entitled to the benefit of every reasonable inference on this motion to dismiss.

Second, and in any case, GEICO was entitled – as a matter of law – to rely on the representations in the Miami Medical Defendants' PIP claims, as this Court itself has observed. See, e.g., Government Employees Ins. Co., et al. v. Quality Diagnostic Health Care, Inc., et. al, S.D. Fla. Case No. 18-cv-20101-JEM, at Docket No. 125, p. 18 (rejecting similar "reliance" arguments in context of summary judgment motions, and noting that "GEICO was entitled to rely upon Defendants' PIP claims"); Peak Prop. & Cas. Ins. Corp. v. Enskin, 2014 U.S. Dist. LEXIS 69780 (M.D. Fla. 2014)("As a matter of law, the insurer is entitled to rely on the representations made by an applicant in the application for insurance."); Suite 225, Inc. v. Lantana Ins., Ltd., 2013 U.S.

Dist. LEXIS 190536 at * 17 (S.D. Fla. 2013)("It is well settled that the insurer is entitled to rely on the representations of an insured, without checking all its files to determine if the insured is committing a fraud.")(Internal quotations and citations omitted). Were it otherwise, then every fraudulent PIP claimant would have a complete defense to a plaintiff-insurer's fraud claim simply by virtue of the fact that the insurer paid the claim.

Third, in keeping with the fact that GEICO was entitled to rely on the representations in the Miami Medical Defendants' PIP claims, the No-Fault Law explicitly permits plaintiff-insurers to challenge fraudulent or unlawful PIP claims at any time, even after they are paid. See Fla. Stat. § 627.736(4)(b)(6)(permitting insurers to assert that PIP claims were medically unnecessary, fraudulent, unlawful, upcoded, etc., **"at any time, including after payment of the claim").**[10]

Accordingly, the Miami Medical Defendants' "reliance" argument is meritless, and their motion to dismiss should be denied.

**C.    The Miami Medical Defendants' FDUTPA and "Reasonableness" Arguments are Meritless**

Along similar lines, the Miami Medical Defendants contend – in totally conclusory fashion – that GEICO's FDUTPA claims should be dismissed because GEICO supposedly has not sufficiently alleged that the Miami Medical Defendants' deceptive practices would be likely to deceive a reasonable consumer. See Docket No. 24, pp. 16-17. Again, however, questions regarding whether a reasonable consumer would be deceived by the Miami Medical Defendants' deceptive practices are not properly resolved via a motion to dismiss pursuant to Rule 12(b)(6). In the present case, GEICO not only has alleged that the Miami Medical Defendants made various misrepresentations in connection with their PIP billing, but also that the Miami Medical Defendants' PIP charges were facially-valid and that GEICO had only 30 days to process the Miami Medical Defendants' claims. See Docket No. 1, ¶¶ 875-884, and passim. In this context –

---

[10] There are obviously sound public policy reasons for this provision, and  the Miami Medical Defendants' baseless assertion that GEICO has waived its right to challenge the claims at issue in this lawsuit because it has already paid them is not only belied by the statute but also the federal courts that have considered this issue and which are referenced throughout the body of this complaint.

especially on a motion to dismiss where GEICO is entitled to every favorable inference – the Court should not resolve the "reasonable consumer" issue at the pleading stage.[11]

Indeed, it is worthwhile to note that courts within the 11th Circuit have denied motions to dismiss plaintiff-insurers' FDUTPA claims that were predicated on substantially identical facts, as set forth in complaints that were in all material respects substantially identical to the Complaint in the present case. See, e.g., Alternative Medical Center of Florida, Inc., supra, at Docket No. 17 (denying motion to dismiss virtually identical FDUTPA claim in substantially identical complaint alleging upcoded examination charges/billing for unsupervised massage therapists); DG Esthetic, supra at Docket No. 29 (same); Luis Lopez Mas, M.D., supra at Docket No. 71, p. 16 (same, and rejecting a "reasonable consumer" argument that is identical to the argument raised by the Miami Medical Defendants herein); State Farm Mut. Auto. Ins. Co. v. Physicians Group of Sarasota, L.L.C., 9 F. Supp. 3d 1303, 1312-1313 (M.D. Fla. 2014)(observing that the FDUTPA is to be "liberally construed", and rejecting motion to dismiss plaintiff-insurer's FDUTPA claims based on an automobile insurance fraud scheme).

**D.     GEICO Has Pleaded its Fraud-Based Claims with the Requisite Specificity**

The Miami Medical Defendants also argue that GEICO's fraud-based claims are not pleaded with the requisite particularity under Rule 9(b). See Docket No. 24, pp. 7-8, 16-17, and passim. The Miami Medical Defendants are incorrect, and ignore the weight of authority from district courts within the 11th Circuit, in which anti-PIP fraud complaints with a virtually identical, or even lesser, amount of detail were held sufficient under Rule 9(b).[12] See, e.g., DG Esthetic,

_____

[11] For their FDUTPA/reasonableness arguments, The Miami Medical Defendants rely on Cluck-U Chicken, Inc. v. Cluck-U Corp., , 2017 WL 10275957, at *9 (M.D. Fla. June 6, 2017), and Deere Constr., LLC v. CEMEX Constr. Materials Fla., LLC, 2016 WL 8542540, at *3 (S.D. Fla. Dec. 1, 2016), cases that involved a motion for summary judgment and a motion for class certification respectively, and are otherwise inapposite cases. See Docket No. 24, p. 17. Beyond just citing to these cases for the purposes of introducing the general, "reasonable consumer" standard on FDUTPA claims, The Miami Medical Defendants do not even attempt to articulate how these cases have any relevance or present any guidance with respect to the present motion.

[12] The Miami Medical Defendants' reference to State Farm v. Feijoo, et. al., 18-cv-23329, ECF Doc. No. 56 is inapposite. See Docket No. 24, pp. 16-17. While the Feijoo court dismissed the plaintiff-insurer's claims for being insufficiently specific under Rule 9(b), GEICO's Complaint in the present case is much more detailed and particular than the State Farm v. Feijoo complaint , and easily meets the Rule 9(b) standard. As set forth herein, every federal court, both in this district and others, have held that anti-PIP fraud complaints pled in a virtually identical matter to this one met the Rule 9(b) pleading standard.

supra at Docket Nos. 21, 22, 29 (denying motion to dismiss GEICO's fraud-based claims – which were pleaded with an identical level of detail as the allegations in the present case – based on argument that the complaint was insufficiently particularized under Rule 9(b)); Luis Lopez Mas, M.D., supra at Docket No. 71 (same); Alternative Medical Center of Florida, Inc., supra at Docket No. 17, p. 5 (holding that "GEICO's comprehensive and granularly specific 119-page complaint" – which was pleaded with a format and level of detail that is virtually identical to the Complaint in the present case – "sufficiently states a cause of action for each of its seven counts."); Government Employees Insurance Co. et al v. Path Medical, LLC et al, M.D. Fla. Case No. 8:17-cv-02848-EAK-TGW, Docket No. 112, pp. 15-18 (sustaining fraud-based claims on allegations with a similar level of detail in PIP fraud case and noting – among other things – that "[t]he complaint details the [] [d]efendants' individual roles in the fraudulent scheme, explains how each of the [] [d]efendants' actions furthered the scheme … [t]he complaint contains numerous examples of the arrangement in support … [f]urthermore, through the attached exhibit, GEICO provides a comprehensive listing of the bills submitted to GEICO as a result of the fraud … ."); Gov't Emples. Ins. Co. v. KJ Chiropractic Ctr. LLC, 2014 U.S. Dist. LEXIS 28913 at *18 n.4 (M.D. Fla. 2014)(GEICO stated fraud claims in anti-PIP fraud case where it set forth the "'who, what, when, and where' of the alleged scheme, including specific claim numbers, dates of loss, which clinic submitted bills, amounts paid by GEICO as well as type of fraud, date of mailing/wire, specific misrepresentations made, and parties who submitted the documents.").

At bottom, any fair reading of the Complaint should leave the respective Miami Medical Defendants with no doubt as to their individual roles in the fraudulent scheme. For example, and as discussed above, the Miami Medical Defendants are alleged to have acted together to submit the fraudulent billing through Miami Medical to GEICO, with J. Jimenez, G. Jimenez, and Marquez directing the affairs of the Miami Medical enterprise, Marquez falsely posing as the "medical director" of the Miami Medical enterprise, Feijoo and Nodarse falsely purporting to supervise a superhuman amount of "physical therapy" services, G. Jimenez, Vazquez, and Uzan performing healthcare services at Miami Medical without the appropriate supervision, and all of the Miami Medical Defendants acting together to cause the fraudulent billing for those services to be submitted to GEICO. See Docket No. 1, ¶¶ 1-80, 139-156, 285-331, 701-872, 783-915, and 873-884. This is more than sufficient to satisfy Rule 9(b).

**E.      GEICO Has Sufficiently Alleged its Claims Against Vazquez and Uzan**

Relatedly, the Miami Medical Defendants argue that GEICO's claims against Vazquez and Uzan should be dismissed for lack of particularity, and because GEICO supposedly has not alleged any facts to show that Vazquez and Uzan "ever made a single false representation… or had any role or responsibility for creating and submitting the HCFA forms.". See Docket No. 24, p. 19, and passim. [13]

Again, the Miami Medical Defendants are incorrect. As discussed above, any fair reading of GEICO's Complaint should leave the Miami Medical Defendants in no doubt as to what each of them is alleged to have done. With respect to Vazquez and Uzan, the Complaint clearly alleges that Vazquez and Uzan performed medically unnecessary "physical therapy" services, with the knowledge that the resulting bills would falsely represent: (i) that the "physical therapy" was medically necessary; and (ii) that they both had been supervised by a licensed physician or chiropractor when performing the "physical therapy"; and (iii) that the "physical therapy" therefore was eligible for PIP reimbursement, when in fact it was not. See Docket No. 1, ¶¶ 139-156, 285-331, 908-915, 873-884, and passim. What is more, the Complaint identifies the billing codes used to bill for Vazquez and Uzan's fraudulent services, and the spreadsheet attached as Exhibit "5" to the Complaint set forth a large, representative sample of the predicate acts of mail fraud in which Vazquez and Uzan – together with their co-Defendants – engaged.

This is sufficient at the pleading stage. See, e.g., KJ Chiropractic Ctr. LLC, supra at *13 (M.D. Fla. 2014)( "Although GEICO has lumped the Defendants together in certain portions of the Second Amended Complaint, this does not negate the fact that GEICO has still alleged specific instances of conduct sufficient to inform each Defendant of its individual role in the alleged scheme."); Government Employees Insurance Co. et al v. Cereceda, et al., S.D. Fla. Case No. 19-cv-22206, at Docket Nos. 57, 72 (in case featuring very similar anti-PIP fraud complaint, pleaded with the same level of particularity as GEICO's Complaint in the present case, denying motion to dismiss where defendants similarly argued that GEICO had not sufficiently pleaded fraud claims against the employees of health care clinics); Orthopedic Rehab Specialty Clinics, Inc. v. State Farm

---

[13] The Miami Medical Defendants also cite to Brooks v. Blue Cross and Blue Shield of Florida, Inc., 116 F.3d 1364, 1380–81(11th Cir.1997) in what appears to be a misguided attempt to make a "group pleading" argument. See Docket No. 24, pp.20-21. For the reasons set forth below, the Miami Medical Defendants' arguments are again baseless.

Mut. Auto. Ins. Co., 2003 U.S. Dist. LEXIS 29312 at * 8 - * 9 (M.D. Fla. 2003)(rejecting similar "group pleading" argument, where insurer/counterclaim-plaintiff alleged that various counterclaim-defendants acted collectively to cause the submission of fraudulent billing, because "such allegations are sufficient at the pleading stage to put the Counter-Defendants on notice of their alleged fraudulent conduct."); DG Esthetic, supra (denying motion to dismiss substantially similar complaint with virtually identical level of detail, pleaded in a substantially identical manner); Luis Mas, M.D., supra (finding a similar "group pleading" argument unpersuasive and held that while "GEICO lumped the Defendants together in certain portions of [the Complaint], this does not negate the fact that GEICO has still alleged specific instances of conduct sufficient to inform each Defendant of its individual role in the alleged scheme.")

In this context, while it is true enough the GEICO does not allege that Vazquez and Uzan personally dropped a fraudulent PIP bill into the mailbox, GEICO is not obligated to make such allegations, considering Vazquez and Uzan's well-pleaded role as two of the primary providers of the fraudulent services in Miami Medical's fraudulent scheme. See, e.g., State Farm Mut. Auto. Ins. Co. v. Physicians Group of Sarasota, L.L.C., at Docket No. 5, pp. 15-18, and 9 F. Supp. 3d at 1311 (though defendants in a highly-analogous PIP fraud case made similar arguments, the Court nonetheless held that the plaintiff-insurer's complaint, which contained a level of detail similar to GEICO's Complaint in the present case, satisfied Rule 9(b)); Cereceda, supra (same); State Farm Mut. Auto. Ins. Co. v. Kugler, 2011 U.S. Dist. LEXIS 107005 at * 17 - * 18 (S.D. Fla. 2011) (though defendants in PIP fraud case made similar arguments, the court nonetheless held that the plaintiff-insurer's complaint, which contained a level of detail similar to GEICO's Complaint in the present case, satisfied Rule 9(b)).

## II.    The Miami Medical Defendants' Motion Should be Denied to the Extent That it Seeks a More Definite Statement Pursuant to Rule 12(e)

As a threshold matter, and as noted above, the Miami Medical Defendants' failure to comply with Local Rule 7.1(a)(3) – standing alone – warrants denial of their motion to the extent that it seeks a more definite statement. See, e.g., Alternative Medical Center of Florida, Inc., supra (in extremely similar federal PIP fraud action, denying motion for a more definite statement "on this basis alone.").

Even if the Court were to consider the Miami Medical Defendants' Rule 12(e) motion despite their failure to comply with the Local Rules, the motion still should be denied. "A party

may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Poling v. Pristine Nutraceuticals, LLC, 2015 U.S. Dist. LEXIS 187949 at * 1 - * 2 (S.D. Fla. 2015), quoting Fed. R. Civ. P. 12(e). In this context, "[a] motion for a more definite statement is intended to provide a remedy for an unintelligible pleading, rather than a vehicle for obtaining greater detail." Id. (internal quotations and citations omitted). In fact, "Rule 12(e) motions are generally disfavored because too often defendants argue that a more definite statement is needed simply to delay the progress of the plaintiff's case." U.S. Specialty Ins. Co. v. Jet One Express, Inc., 2013 U.S. Dist. LEXIS 95481 at * 5 (S.D. Fla. 2013). More generally, Rule 12(e) motions "should not be used as a means of discovery." Rodriguez v. Carrot Express Midtown, LLC, 2019 U.S. Dist. LEXIS 222187 at *6 (S.D. Fla. Dec. 30, 2019).

Against this backdrop, the Miami Medical Defendants do not identify any portion of GEICO's Complaint that is so vague or ambiguous that they cannot reasonably prepare a response. See Docket No. 24, passim. Either Miami Medical was unlawfully operated without a legitimate medical director in violation of the Clinic Act, or it was lawfully operated in compliance with the Clinic Act. Either the putative healthcare services that were billed through Miami Medical to GEICO were "lawfully provided" and medically necessary, or they were not. Either the Miami Medical Defendants illegally billed GEICO for physical therapy services provided by an unsupervised massage therapist and/or chiropractic assistant – and falsely represented in the billing that the masseuse and chiropractic assistant worked under the direct supervision of a licensed physician – or they did not. Either the numerous, claim-specific examples of the Miami Medical Defendants' fraudulent treatment and billing practices that are set forth in the Complaint are accurate, or they are not.

Simply put, GEICO's Complaint presents a straightforward, easily understandable narrative setting forth detailed facts regarding the Miami Medical Defendants and their fraudulent activities. See Docket No. 1, passim. Indeed – and as discussed above – GEICO's Complaint in this action is sufficiently detailed and clear to withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b), let alone a motion for a more definite statement.

The Miami Medical Defendants' contention that GEICO's complaint is somehow unintelligible because it uses phrases such as "in many cases" and "to the extent the services were provided at all" is belied by two recent decisions from this district in which motions for a more

definite statement were denied. See Docket No. 24, pp. 23-24. Both cases – Gov't Emples. Ins. Co. v. Benefica Health Ctr., Corp., 2017 U.S. Dist. LEXIS 66542 (S.D. Fla. 2017) and Alternative Medical Center of Florida, Inc., supra – involved substantially similar PIP fraud complaints, featuring substantially similar allegations and a virtually identical format and level of detail.[14] In Benefica, the Honorable Federico A. Moreno denied the defendants' motion for a more definite statement under Rule 12(e). As Judge Moreno observed:

> The amended complaint provides more than adequate information for Defendants to respond in good faith. Defendants are on clear notice of their alleged fraudulent conduct as the amended complaint alleges, inter alia, that Benefica was unlawfully operating without a legitimate medical director; that the putative health care services billed through Benefica were fraudulent; and that Defendants illegally billed GEICO for services. The amended complaint is not unintelligible. To the contrary, although it does not specify all allegedly fraudulent reimbursement claims, it provides thousands of examples, each containing Benefica's claim number, the date received, CPT code, and purported date of service. To the extent any allegations are unclear due to a lack of specificity, they are more appropriately clarified by discovery.

Id. at *5; see also Alternative Medical, supra, Docket No. 17, fn. 1 (denying motion for more definite statement based – as in the present case – on the defendants' failure to meet and confer as required by the local rules, but noting, in any case, that "had the Court assessed Alternative Medical's motion for a more definite statement on its merits it likely would have reached the same conclusion: the complaint 'provides more than adequate information for Defendants to respond' and is far from unintelligible.")

GEICO's Complaint is in all material respects identical to the complaints in Benefica and Alternative Medical. Therefore, GEICO respectfully submits that the present motion for a more definite statement should be denied for the same reasons that Judge Moreno denied the Benefica defendants' motion for a more definite statement.

---

[14] For example – and as in the present case – in both the Benefica case and the Alternative Medical Center of Florida case, GEICO alleged that the defendant healthcare clinics and their associates submitted fraudulent billing for physical therapy services that unlawfully were performed by unsupervised massage therapists, falsely represented in the billing that a licensed physician had either personally performed or directly supervised the physical therapy services, and falsely represented that the services were medically necessary, and in some cases that the services actually had been performed. By extension, in both the Benefica case and the Alternative Medical Center of Florida case – as in the present case – GEICO alleged that the defendant healthcare clinics lacked legitimate medical directors, and therefore were operating in violation of the Clinic Act.

Accordingly, the Miami Medical Defendants' motion should be denied to the extent that it seeks a more definite statement.

**III.     To the Extent That the Court Finds any Defect, GEICO Requests Leave to Replead**

GEICO believes that its Complaint adequately alleges its claims against the Defendants. To the extent, however, that the Court finds the Complaint to be inadequate in any manner, GEICO respectfully requests leave pursuant to Fed. R. Civ. Proc. 15(a) to serve an amended complaint, as it believes that any such inadequacies would be merely issues of technical pleading rather than substantive defects in the claims. When a party requests leave to amend its complaint, permission generally should be freely granted. See, e.g., Chrystall v. Serden Techs., Inc., 2011 U.S. Dist. LEXIS 144613 at *18 (S.D. Fla. 2011)

## CONCLUSION

For the reasons stated above, the Miami Medical Defendants' motion to dismiss and alternative motion for a more definite statement should be denied in its entirety.

Respectfully submitted,

*/s/ John P. Marino*
John P. Marino (FBN 814539)
Lindsey R. Trowell (FBN 678783)
Kristen L. Wenger (FBN 92136)
SMITH, GAMBRELL & RUSSELL, LLP
50 North Laura Street, Suite 2600
Jacksonville, Florida 32202
Phone:  (904) 598-6100
Facsimile:  (904) 598-6204
ltrowell@sgrlaw.com
jmarino@sgrlaw.com
kwenger@sgrlaw.com

Yonatan Bernstein (admitted pro hac vice)
RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New York 11550
Phone:  (516) 357-3000
Facsimile:  (516) 357-3333
yonatan.bernstein@rivkin.com

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on July 22, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will provide notice and a copy of the foregoing to the counsel of record in this case.

*/s/ John P. Marino*