UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

GOVERNMENT EMPLOYEES INS. CO.; et al          Case No.: 20-CV-22044-JEM

      Plaintiffs,

v.

MANUEL V. FEIJOO, MANUEL V. FEIJOO, M.D., P.A.
WE CARE MEDICAL SERVICES, INC, MANUEL MARTINEZ
VARELA, TONY NGUYEN, D.O.; NEW LIFE CLINICAL
SERVICES, INC., ALEAN MACHADO, JOSE ESTEVEZ,
YOANDRA RODRIGUEZ, ACCIDENT REHAB ASSC. INC.,
d/b/a AMERICAN MEDICAL & REHAB CENTER,
ALEJANDRO VAZQUEZ, MARIA VAZQUEZ, ERICK SALADO,
M.D., MIAMI MEDICAL GROUP, INC., JUAN JIMENEZ,
GRACIELA JIMENEZ, JOSE MARQUEZ, M.D., MARIA NODARSE,
D.C., YARA VAZQUEZ and HAI UZAN

      Defendants.

_____/

**DEFENDANT FEIJOO**
**MOTION TO DISMISS AND TO STRIKE**

Defendants, DR. MANUEL V. FEIJOO, and MANUEL V. FEIJOO, M.D., P.A.,
(collectively "Feijoo")  pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) move to
dismiss the causes of action alleged against them, and pursuant to Rule 12(f), move to strike certain
portions of the complaint and in support thereof state:

The Complaint filed by the Geico Plaintiffs ("Geico") consists of 312 pages, 1133 pghs
(excluding sup-parts), 34 causes of action against the five medical groups and 14 doctors/medical
provider Defendants and 400 pages of exhibits. Exhibit 1 is a spread sheet of Dr. Feijoo's bills to
Geico going back to 2013, and is 89 pages long and summarizes 11,129 bills, entitled "RICO
events." Exhibits 2-5 are similar ones for the We Care, New Life, Accident Rehab and Miami
Medical defendants.

In short, the 34 counts allege that the Defendants violated the Florida's Health Care Clinic
Act, Fla. Stat. § 400.9935 (The Clinic Act), the Patient Brokering Act, Fla. Stat § 817.505 and the
Florida's Patient Self-Referral Act, Fla. Stat. § 456.053 (the "Self-Referral Act"); thus precluding

and indeed alleging it to be a crime, each time Feijoo and the other providers billed GEICO for treatment provided to its insureds, and in Feijoo's case for what appear to be each and every one of his bills over the last seven years. See Complaint, ¶2.  The gist of the allegations against the Defendants, including, Dr. Feijoo, and his Professional Association. can be found in ¶3, where Geico states that "3.  Defendants fall into the following categories:

> (i) Defendant Feijoo P.A., through which the Fraudulent Services purportedly were performed and were billed to insurance companies, including GEICO, falsely purported to be a properly-exempted health care clinic under the Clinic Act, and operated in pervasive violation of Florida's Clinic Act, the Patient Brokering Act, and the Self-Referral Act.
> (ii) Defendants We Care, New Life, Accident Rehab, and Miami Medical, through which the Fraudulent Services purportedly were performed and billed to insurance companies, including GEICO, falsely purported to be properly-licensed health care clinics that operated in compliance with the licensing and operating requirements set forth in the Clinic Act.
> (iii) Defendant Manuel Feijoo ("Feijoo") is a physician licensed to practice medicine in Florida, was the owner of Feijoo P.A., purported to perform virtually all the Fraudulent Services at Feijoo P.A., and also purported to perform a significant amount of the Fraudulent Services at We Care, New Life, Accident Rehab, and Miami Medical.

In Section I of the Complaint, entitled "**An Overview of the Pertinent Law Governing No-Fault Insurance Reimbursement,**" Geico provides its summary of the three acts. See Complaint, pages 12-20. In Sections I – A & B, Geico discusses Florida Motor Vehicle No-Fault Law (the "No-Fault Law", Fla. Stat. §§ 627.730-627.7405), which requires automobile insurers to provide Personal Injury Protection benefits ("PIP Benefits") to Insureds, and the reimbursement duties and obligations under the Statute.  Then in Sections C-E, Geico discusses how the "No-Fault Law" (or PIP statute) relates to the Clinic Act, the Patient Brokering Act, and the Self-Referral Act.   In Sections H–I, Geico discusses the requirements that insurers only have to pay for treatment that is medical necessary, what treatment can or cannot be billed (e.g., massage) and the requirements of billing on HCFA-1500 forms and in accordance with the AMA guidelines.

In Section II, entitled **"Defendants' Fraudulent Schemes"** Geico attempts to allege how Feijoo, and the other Defendants, violated the three acts and Florida PIP law.  However, the

complaint improperly lumps Dr. Feijoo in with the other Defendants for their billing practices without stating with particularity any fraud on the part of Dr. Feijoo.

In II(A) starting at page 20, ¶81, Geico purports to allege how all the Defendants violated The Clinic Act. Section II (A)(1) relate to Dr. Feijoo failed to supervise himself at his own clinic. Section II(B) alleges that the other clinics violated the Clinic Act by not having a real Medical Director and making fraudulent misrepresentations about the level of supervision by the doctors listed on the bills, including Dr. Feijoo. Section II-C, starting at page 81, purports to allege how all the Defendants violated The Patient Brokering Act. In Section II-D, starting at page 85 (Clearly, this complaint is so cumbersome it should have come with a table of contents) purports to allege how all the Defendants violated the Self-Referral Act.

Section II-E discusses how Defendants purportedly violated Florida's "Billing Protocols" under the no fault law. II-E boils down to allegations that the doctors "upcoded" e.g., billed for an initial evaluation with a CPT code of 99204 that Geico feels should have been billed at a lower number, based on the CPT guides. E.g. ¶366. Geico even alleged that these very claims have been the subject of numerous PIP lawsuits between Geico and the Feijoo, (and Geico and each of the clinics) and although beyond the four corners of the complaint, it will be shown that these billing practices have already been litigated resulting in findings adverse to Geico.

**The Causes of Action Against Feijoo**

The first Count is a Declaratory Judgment Action against the five medical clinics: **Feijoo P.A., We Care, New Life, Accident Rehab, and Miami Medical** and is the only count against all the clinics. The remaining counts against the Feijoo defendants can be broken down into the following categories:

1.   **Counts 2-6** are against only the Feijoo Defendants and are for RICO, Violation of Fla. Stat. §501.201, Violation of Fla. Stat. §772.103(3), Common law Fraud and Unjust Enrichment. GEICO incorporates each and every allegation in paragraphs 1-88, 332-520, and 873-884 into those causes.

2. **Counts 8 and 11** are against Martinez, Nguyen, and Feijoo for Violation of RICO, and Fla. Stat. §772.103(4), respectively, and appear to be related to allegations against the **We Care** clinic. The counts incorporates each and every allegation in paragraphs 1-105, 158-202, 332-338, 346-363, 521-539, and 873-884.

3. **Counts 15 and 18** follow the same pattern and appear to be related to the **New Life** defendants. The counts incorporate every allegation in paragraphs 1-82, 106-122, 157, 203-246, 339-363, 540-557, and 873-884.

4. **Counts 22 and 25** follow the same pattern and appear to be related to the **Accident Rehab** defendants. The counts incorporate every allegation in paragraphs 1-82, 123-138, 247-284, 358-363, 558-700, and 873-884.

5. **Counts 29 and 32** follow the same pattern and appear to be related to the **Miami Medical** defendants. The counts incorporate every allegation in paragraphs 1-82, 139-157, 285-331, 358-363, and 701-884.

The reality of the suit is that the medical provider Defendants have sued Geico in small claims court to get paid for their treatment of patients that happen to be insureds under Geico's PIP coverage. Geico has for years lost most of those cases. This suit is a retaliation against the medical providers herein by grouping them together for unrelated patients/treatments and matters.

## Memorandum of Law

### A. Motion to Dismiss

**1.    Legal Standard**

The legal standard for motions to dismiss have been well briefed by the other defendants and in the sake of brevity is not repeated herein.

**2.    Geico Alleges A Billing Dispute But Fails To State A Plausible Claim For *Fraud***

Geico fails to comply with Rules 8 and Rule regarding notice  pleading and stating fraud with particularity. Although the complaint is massive, its similar complaint in *Gov't Emples. Ins. Co. v. A&C Med. Ctr. Servs., Corp*., 2019 U.S. Dist. LEXIS 133568 (S.D. Fla. 2019)(Martinez, J.) was dismissed and GEICO was ordered to file a shorter version of its complaint. Unlike the complaint in *A & C,* however, Geico's pleading deficiencies go further, particularly with regard to its averments directed to Dr. Feijoo and his clinic.

GEICO's Complaint attempts to elevate a dispute about the technical requirements of PIP billing into a salacious RICO conspiracy.  It does so *solely* on the bald conclusion that a medical doctor who submits a bill for straightforward physical therapy services, provided under the doctor's general or indirect supervision by people specially trained in the provision of such services, does so *intending to commit criminal fraud*.  And in Fejioo's case, at least with respect to the first six causes of action that only relate to Dr Feijoo's patient treatment by himself in his own offices (in contrast to the other counts relating to his occasionally seeing patients at the other clinics, the allegations fail to state with particularity how he could have treated his patients by indirect supervision.   The Complaint (even the examples) are purely legal conclusions logically impossible on its face.  It posits that the Feijoo and his clinic, and the other Defendants *must* have committed criminal fraud because each of their records so obviously reflected unnecessary and unreasonable care that anyone "legitimately" reviewing any one them would have concluded immediately upon doing so that each was *entirely* fraudulent…*except for the GEICO PIP adjusters who paid for the treatment over and over and over again.*

Every cause of action alleged by GEICO is premised implausible accusations of criminal fraud. As detailed below, however, GEICO's self-serving legal conclusions and circular reasoning fail in all respects to serve as plausible bases for alleging intentional fraud, and each one of GEICO's causes of action therefore fail to state a claim as a matter of law.

**3.**   **The Clinic Act and Patients Seen by Feijoo at his Own Clinic**

Feijoo adopts and incorporates herein the argument of the Miami Medical Defendants in their motion to dismiss, pages 9-19 and the legal arguments therein.  In ¶50, Geico alleges that:

> 50. However, the Clinic Act provides an exemption from the clinic licensing requirements for: A sole proprietorship, group practice, partnership, or corporation that provides health care services by licensed health care practitioners . . . **that is wholly owned by one or more licensed health care practitioners, or the licensed health care practitioners set forth in this paragraph and the spouse, parent, child, or sibling of a licensed health care practitioner** if one of the owners who is a licensed health care practitioner is supervising the business activities and is legally responsible for the entity's compliance

with all federal and state laws. However, a health care practitioner may not supervise
services beyond the scope of the practitioner's license … .
Fla. Stat. § 400.9905(4)(g)(emphasis added).

In ¶s 80-86, Geico makes the absurd and unsupported allegation that Feijoo PA is not exempt from

the Clinic Act, because Feijoo failed to supervise himself and his P.A.. See ¶86 " there is simply

no way that Feijoo could have legitimately supervised the business activities of Feijoo P.A. to

ensure that the billing was not fraudulent or ensure compliance with all applicable federal and state

laws as required by the Clinic Act."  The Complaint fails to allege with particularity any fraudulent

scheme by Feijoo with respect to patients he has seen at his own medical practice.

### 4.     <u>The Clinic Act and Patients Seen by Feijoo at other Clinics</u>

As for the other clinics, Geico alleges Dr. Feijoo occasionally saw patients at We Care,

New Life, Accident Rehab, and Miami Medical, but nowhere in the complaint does Geico allege

with sufficient particularity how that is a fraudulent practice.

For example, (and to borrow from the motion filed by the Miami Medical Defendants)

GEICO alleges that Miami Medical violated Florida's Health Care Clinic Act (Fla. Stat. §

400.9935), based on the conclusory accusation that its Medical Director, Jose Marquez, M.D.

"never conducted systematic reviews" of Miami Medical's billings to ensure "that the billing was

not fraudulent or unlawful" and permitted Miami Medical to "misrepresent" the identities of the

treating providers.   <u>See</u> ECF 1, ¶147-150.   GEICO further alleges that criminal fraud was

committed because the doctors under whose names "virtually all" of the at issue bills were

submitted – Feijoo and Nodarse – were "most likely" not physically present in the room when in

each physical therapy service they had prescribed was provided by their assistants.  <u>See</u> ECF, ¶296-

297. The heart of GEICO's criminal indictment against Feijoo and his evaluation and or treatment

of patients at the Miami Medical is found in paragraphs 312-316.  Therein, GEICO weaves a tale of statutory divination, starting with Florida's PIP statute, moving next to the Medicare Claims Processing Manual, and ending with the Code of Federal Regulations.

GEICO is certainly entitled to use this legal opinion, however self-serving it may be, to justify its denials of PIP bills.  But GEICO goes far further, alleging that Miami Medical, by billing for physical therapy services under the names of Dr. Feijoo, and/or Dr. Nodarse when it appears that both doctors were not always physically present within the room when each such service was rendered by their assistants, committed intentional fraud.

Though GEICO tries to obscure reality with a sheer volume of parties and words, its *entire* allegation of <u>fraud</u> boils down to its purely legal conclusion about the level of supervision required. Every "fact" pleaded by GEICO is designed solely to show that it is "improbable" that the doctors' level of supervision met the definition of "direct supervision" which GEICO concludes is so obviously required that anyone who bills otherwise is a RICO conspirator.

But if the level of supervision required of a licensed doctor over therapy treatments provided for what GEICO calls "low-severity" injuries is not in fact required to be "direct" as GEICO has defined it, then GEICO has failed to plausibly allege even one single false representation, much less the grand criminal conspiracy it accuses Feijoo of masterminding – with himself for his own clinic, or with respect to the other clinics.

This is because, by its own pleading, GEICO concedes that the bills for We Care, Accident Rehab, New Life or Miami Medical's bills were entirely accurate if, for example with respect to Miami Medical, Dr. Marquez, Dr. Feijoo and/or Dr. Nodarse provided an *appropriate* level of supervision. GEICO admits that every note reflecting the services provided by nonphysician

personnel was signed and acknowledged to have been entirely provided by the nonphysician personnel who performed them.  GEICO could therefore *never* have paid a single bill under the false impression that Dr. Marquez, Dr. Feijoo or Dr. Nodarse had performed them *personally*.  See ECF 1, ¶320 (i-x).  By paying Miami Medical's bills, GEICO acknowledged that if Dr. Marquez, Dr. Feijoo and/or Dr. Nodarse provided an appropriate level of supervision, whatever that may be, then all of Miami Medical's were perfectly accurate and GEICO has failed to allege a plausible basis even to deny a single bill.

But even if GEICO's self-serving legal conclusion and definition concerning "direct" supervision is ultimately determined to be correct, its allegation of *knowing fraud* cannot be considered plausible.  GEICO has, at best, only alleged facts to support an inference that Dr. Marquez, Dr. Feijoo and/or Dr. Nodarse were not physically in the room while some undefined number of more than 23,000 billed services were provided.  GEICO has *not* plead *any* facts as to the level of supervision the doctors *actually provided*, nor any facts to demonstrate that Miami Medical *knew* they were billing incorrectly (if they even were).

Accordingly, all claims against the Feijoo Defendants premised on violation of the Clinic Act should be dismissed for failing to state fraud with particularity.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, which, if accepted as true, would state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  **The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint.** *Asbury v. Slider*, 2020 WL 871097, at \*2 (M.D. Fla. Feb. 21, 2020), *citing Ashcroft*

_v. Iqbal_, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2))(emphases added).

The "plausibility standard requires that the allegations be more than merely conceivable." _Pavic v. Laser Spine Inst., LLC_, No. 8:13-CV-02578-EAK, 2014 WL 2707953, at *1 (M.D. Fla. June 13, 2014), _citing Bell Atl. Corp. v. Twombly_, 550 U.S. 544, 570 (2007). "Application of this standard follows two analytical principles. First, the court will not presume the truth of a complaint's **legal conclusions**. Second, a complaint's well-pleaded factual allegations must allow the court to infer the plausibility, rather than the **mere possibility**, that the plaintiff is entitled to the relief sought." _Pavic v. Laser Spine Inst., LLC_, No. 8:13-CV-02578-EAK, 2014 WL 2707953, at *1 (M.D. Fla. June 13, 2014) (emphasis added).

The implausibility of GEICO's FDUTPA claims in this case is demonstrated by its _admitted_ failure to conduct itself as a reasonable consumer would have under the same circumstances. _Cluck-U Chicken, Inc. v. Cluck-U Corp._, 2017 WL 10275957, at *9 (M.D. Fla. June 6, 2017), _citing Cold Stone Creamery, Inc. v. Lenora Foods I, LLC_, 332 F. App'x 565, 567 (11th Cir. 2009). GEICO's own Complaint establishes that a consumer acting reasonably in the same circumstances would not have been deceived by either Dr. Feijoo or and of the physicians from the other clinics whose name appearing in box 31 of the HCFA forms submitted by Feijoo PA, or by the other Clinics.

Exhibit 1 to GEICO's Complaint purports to identify over 11,000 individual services provided at Feijoo's Clinic (and thousands of other services at the other clinics) each one of which it alleges to have been fraudulently billed. However, in characterizing the fraud alleged to have been committed with respect to each of these services, GEICO repeatedly adds the caveats "in many cases" and "to the extent they were provided at all." (_See_ Complaint generally). These

caveats create multiple theories of fraud with respect to each date of service and render the entire Complaint insufficiently specific. *See* <u>Urdaneta v. JP Morgan Chase Bank, N.A.</u>, 2010 WL 11504729, at *2 (S.D. Fla. Jan. 22, 2010)("By proposing alternative theories, Plaintiffs fail to state their fraud claim with specificity."). A complaint is adequate if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)2. When a complaint indiscriminately lumps all defendants together, it fails to comply with Rule 8. *See* <u>Lane v. Capital Acquisitions & Mgmt., Co</u>., No. 04-60602 CIV, 2006 WL 4590705, at *5 (S.D. Fla. Apr. 14, 2006) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, the Complaint fails to satisfy the minimum standard of Rule 8). While a complaint against multiple defendants may be "read as making the same allegation against each defendant individually," the "factual allegations must give each defendant 'fair notice' of the nature of the claim and the 'grounds' on which the claim rests." <u>George & Co., LLC v. Alibaba.com, Inc</u>., No. 2:10-cv-719-FtM-29DNF, 2011 WL 6181940 at * 2 (M.D. Fla. Dec. 13, 2011) (citations omitted). In addition to satisfying Rule 8(a), a complaint asserting a fraud claim must also satisfy the heightened pleading requirements of Rule 9(b), stating "with particularity the circumstances constituting fraud." <u>Mizzaro v. Home Depot, Inc</u>., 544 F.3d 1230, 1237 (11th Cir. 2008); *see also* <u>Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc</u>., 594 F.3d 783, 789 (11th Cir. 2010) (citations omitted). Rule 9(b) is satisfied where the complaint states:

> (1)  precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Mizzaro*, at 1237. Geico's complaint that Feijoo violated the Clinic Act, wither with respect

to patients he saw at his own clinic (Counts 1-6) or patients he saw at the other Defendants' Clinics (**Counts 8, 11** – the **We Care** clinic; **Counts 15 and 18 -** the **New Life** clinic, **Counts 22 and 25 -** the **Accident Rehab** defendants as well as **Counts 29 and 32 – Miami Medical**) are not plausible on their face and not stated with particularity and should be dismissed).

**5.  Alleged Violations of The Patient Brokering Act, Fla. Stat § 817.505**

In Section II-C, starting at page 81, the complaint purports to allege how all the Defendants violated The Patient Brokering Act. Subsection C-1 discusses how the We Care defendants, including Feijoo, are alleged to have violated the Act. The remaining subsections are identical other than changing the names of the Clinic. The Complaint alleges that Florida's Patient Brokering Act, Fla. Stat. § 817.505, broadly prohibits any person from offering, paying soliciting, or receiving any commission, bonus, rebate, kickback, or bribe – directly or indirectly, in cash or in kind – or from engaging in any fee-splitting arrangement of any type whatsoever, to either induce a patient referral or in exchange for a patient referral ¶59. So, for example, in ¶334, it is alleged that Feijoo routinely referred patients to the We Care Clinic in exchange for compensation. As stated above, what is lacking overall, and particularly with respect to Dr. Feijoo are allegations stating this fraudulent conduct with particularity as required by Rule 9.

If this were a criminal indictment, the State would have to allege what remuneration Dr. Feijoo allegedly received, his intent to violate the statute, and the details of the alleged fee-splitting arrangement.  As an example, a complaint that was found to have satisfied the requirements of pleading violation of the statutes is found in _State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC_, 278 F. Supp. 3d 1307, 1331-32 (S.D. Fla. 2017) wherein Judge Moore denied a motion to dismiss several similar counts (though he granted it as to the

declaratory judgment count and as to certain individual medical providers).  There the Court noted

the allegations were:

> This scheme consisted of two allegedly "unlawful referral arrangements," id. ¶ 121. The first such arrangement (the "Metropolitan Arrangement") took place from early 2012 through April 2014. Id. ¶ 6. During that time, Calhoun, a medical practice which specialized in orthopedic treatment and surgery, referred patients to Metropolitan, a surgical facility where Calhoun's physicians would perform surgery. Id. ¶ 6. Prior to treatment, Calhoun required each patient to execute a Letter of Promise (or "LOP"), which provided that Calhoun would be paid from any settlement, judgment, or verdict rendered in connection with the patient's personal injury claim. Id. ¶ 60; see also id. ¶¶ 39–40. For each referred surgical procedure performed on Calhoun's patients, Calhoun paid Metropolitan an all-inclusive pre-arranged price in full satisfaction of the patient's surgical facility charges. Id. ¶ 6….typically pre-negotiated and based on a price list that assigned a specific dollar amount to particular procedures. Id. Despite this pre-arranged price, however, Metropolitan prepared and sent invoices to Calhoun which reflected an amount for Metropolitan's services that "greatly exceeded" the amount Calhoun actually paid…

That level of particularity is absent in the subject complaint and it must be dismissed.

**6.** **Alleged Violations of The Florida's Patient Self-Referral Act, Fla. Stat. § 456.053**

In Section II-D, starting at page 85, the complaint purports to allege how all the Defendants

violated the Self-Referral Act.  The complaint alleges Florida's Patient Self-Referral Act, Fla. Stat.

§ 456.053, prohibits health care providers from referring patients for certain designated health care

services to any entity in which the health care provider is an investor or has an investment interest.

¶63.  Pursuant to the Self-Referral Act, clinics and other health care providers may not submit any

claim for payment to any insurer for services rendered pursuant to an unlawful self-referral. See

Fla. Stat. § 456.053(5)(c). ¶66.  Here, the allegations with respect to Dr. Feijoo and any self-referral

are conclusory and lack the requisite specificity.

**7.** **Alleged Violations of PIP Statute Billing Protocol**

The Court should abstain from litigating what is essentially a billing and coding dispute.

The issue has been litigated in state court whether an initial evaluation should have been billed at

a 99204 code, or a 99203. To the extent that Geico is trying to allege that there is a fraudulent scheme to "up-code" bills the complaint is insufficient.  Moreover, it is insufficient as to the allegations with respect to Feijoo and his own clinic, but it is woefully insufficient as to the Counts involving the counts that lump Dr. Feijoo in with the other Defendants, merely because he saw patients at their clinic.

Rule 9(b) requires that in alleging fraud a "party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "Where multiple defendants are involved, the complaint must contain sufficient, specific allegations with respect to each defendant rather than lumping all defendants together." Gov't Employees Ins. Co. v. KJ Chiropractic Ctr. LLC 2014 WL 12617566, at 3 (M.D. Fla. Mar. 6 2014).  The complaint fails to do so as to each count involving Feijoo as noted below.  In a nearly identical case, GIECO v. MLS Medical Group, LLC, et all, (Disc Ct. N.J Dec. 6, 2013) the Court dismissed Geico's declaratory judgment action. The Court held:

> Even assuming there is a basis for subject matter jurisdiction over the declaratory judgment claim, the Court will, in its discretion, decline to exercise its power to adjudicate the claim for a declaratory judgment under 28 U.S.C. § 2201. The Supreme Court has noted that "district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdiction prerequisites." Wilton v. Seven Falls Co., 515 U.S. 277, 289 (1995)... Heeding the PIP statute and governing caselaw, this Court will, in its discretion, decline to entertain GEICO's claim for a declaratory judgment that MLS is not entitled to payment on its pending PIP claims.

A copy of the Opinion is annexed hereto as Exhibit 1.  The Court also dismissed the RICO counts.

The Court held:

> Insofar as the mail fraud consists of the submission of claims to GEICO based on false diagnoses, non-treatment, and/or the provision of medically unnecessary treatment or tests, the RICO claim suffers from same deficiencies discussed by the Court above in connection with its analysis of the IFPA claim. The Amended Complaint describes, generally, the standard handling of GEICO-insured patients: patients are referred to MLS pursuant to an

–13–

> alleged kickback arrangement and present for treatment even though they mostly have minor or non-existent injuries and then GEICO "routinely" bills under CPT codes that overstate the severity of the injury and/or correspond to medically unnecessary tests and treatment. It alleges that this misconduct applies to "virtually every case" and "almost every instance." (See, e.g., Am. Compl. at ¶¶ 50-56.) Missing from the Amended Complaint are factual allegations of fraud tailored to why any individual diagnosis or treatment and its corresponding billing were false.

Id at p. 18-19**.**  As to similar allegation of violation of statutes identical to Florida's Self Referral

Act or Patient brokering act, the Court stated at P. 19:

> The generation of business by a doctor's office through patient referrals by other doctors does not, without more, raise even an inference of unlawful activity, and GEICO's assertion that the lease payments made by GEICO to referring physicians were simply kickbacks in disguise is purely conclusory. Other than GEICO's broadbrush allegations that most of the patients seen by MLS through this referral arrangement were not as seriously injured as the CPT codes corresponding to diagnosis and treatment would reflect, or in some cases not injured at all, no facts support its characterization of the payments as kickbacks. Simply attaching this label to ostensible referral fees or lease payments does not transform the payments into bribery, and it does not suffice to plead with particularity that any MLS bill, submitted by mail to GEICO, establishes the commission of mail fraud

**8.**   **Count 1 - Declaratory Judgment**

As stated by the 11th Circuit, "In all cases arising under the Declaratory Judgment Act, 28

U.S.C. § 2201 . . . the threshold question is whether a justiciable controversy exists." *Atlanta Gas*

*Light Co. v. Aetna Cas. and Sur. Co.,* 68 F.3d 409, 414 (11th Cir. 1995). "The party who invokes

a federal court's authority must show, at an 'irreducible minimum,' that at the time the complaint

was filed, he has suffered some actual or threatened injury resulting from the defendant's conduct,

that the injury fairly can be traced to the challenged action, and that the injury is likely to be

redressed by favorable court disposition." *Id.*  In *Atlanta Gas,* the Eleventh Circuit concluded that

there was no case or controversy between the parties at the time the complaint was filed and,

therefore, ordered dismissal of the action. 68 F.3d at 415-16.

–14–

Here, Florida's PIP statute provides a mechanism for State Farm to challenge any bills that it has not yet paid.  Furthermore, if the party's concern is the threat of future injury, "[t]here must be a substantial likelihood that the plaintiff will suffer [such] future injury: a 'perhaps' or 'maybe' chance is not enough." *Malowney v. Fed. Collection Dep. Group,* 193 F.3d 1342, 1347 (11th Cir. 1999). "The remote possibility that a future injury may happen is not sufficient to satisfy the 'actual controversy' requirement for declaratory judgments." *Malowney,* 193 F.3d at 1347. Indeed, even a "well-founded" concern is insufficient to create a justiciable controversy if it is based on speculation. *Atlanta Gas Light, supra,* 68 F.3d at 415.

In *GAF Bldg. Materials Corp. v. Robert Bosch Tools Corp*., 90 F.3d 479, 481 (Fed. Cir. 1996), the Federal Circuit affirmed the dismissal of a dec action in a patent case, noting that "the dispute was purely hypothetical and called for an impermissible advisory opinion."  *See also*, *Black & Decker, Inc. v. Robert Bosch Tool Corp*., 371 F. Supp. 2d 965, 970 (N.D. Ill. 2005) (dismissing a counterclaim seeking declaratory judgment that a pending patent application was unenforceable due to inequitable conduct); *Axis Surplus Ins. Co. v. Contravest Constr. Co*, 921 F.Supp.2d 1338 (M.D. Fla. 2012)(dismissing dec action as premature when coverage had not yet been denied).  In a similar case, *State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1331-32 (S.D. Fla. 2017), the Court dismissed State Farm's declaratory judgment action. There, the Court stated: "However, unlike the statutes undergirding the *Silver Star* plaintiff's unjust enrichment claim, none of the statutes in question here provide that "[a]ll charges or reimbursement claims made" in violation of these statutes, are "unlawful" or "noncompensable" or "unenforceable," *Silver Star,* 739 F.3d at 583. Plaintiff does

−15−

not cite any authority standing for the proposition that any services provided by a party violating one of the statutes in question are not owed or otherwise not enforceable." Id.

Although Geico tries to avoid the defect in *Performance* and purports to claim that none of the bills are compensable, attempting to align itself with *Silver Star*, it has not shown that every bill is not compensable for the reasons stated above, i.e. that its complaint fails allege to allege a violation of the subject statutes: Regarding the Clinic Act, with respect to Counts 1-6, that that Feijoo is not exempt from the Clinic Act, and as to the remaining counts where Feijoo is only alleged to have occasionally seen patients at the other clinics a doctor does not have to be in the room the entire time that another physician or provider performs a treatment. The alleged violations of the Self-Referral Act and Patient Brokering act allegations are likewise insufficient.

In a nearly identical case, <u>*GIECO v. MLS Medical Group, LLC, et all*</u>, (Disc Ct. N.J Dec. 6, 2013) the Court dismissed Geico's declaratory judgment action as Geico could avail itself of the billing protocols under New Jersey's PIP Statute holding, "Heeding the PIP statute and governing caselaw, this Court will, in its discretion, decline to entertain GEICO's claim for a declaratory judgment that MLS is not entitled to payment on its pending PIP claims."

9.    <u>**Counts 2-6**</u> - Counts 2-6 are against only the Feijoo Defendants and are for violations of RICO, §501.201, §772.103(3), Common law Fraud and Unjust Enrichment. GEICO incorporates every allegation in paragraphs 1-88, 332-520, and 873-884 into those causes. These counts relate to patients Feijoo evaluated and treated at his own clinic. As stated above, the counts fail to state fraud with particularity with respect to violation of the Clinic Act, or other Acts, and fail the plausibility requirements. Additionally, Counts 2-6 fail to meet the pleading requirements as set forth below.

a.      <u>**Count 2 - RICO**</u>

Count 2 essentially alleges that Feijoo used his Professional Association as a criminal enterprise "based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over seven years seeking payments that Feijoo P.A. was not eligible to receive under the No-Fault Law because: (i) Feijoo P.A. was unlawfully operated in violation of the Clinic Act, Patient Brokering Act, and Self-Referral Act; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Feijoo P.A." Complaint ¶889-893. ¶892 states that "A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "1".

To state a claim under this section, the plaintiff must establish "first, that the defendant committed a pattern of RICO predicate acts under 18 U.S.C. [section] 1962; second, that the plaintiff suffered injury to business or property; and, finally, that the defendant's racketeering activity proximately caused the injury." *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 705 (11th Cir. 2014) (citations omitted; alteration added).

As stated above, Gecio has failed to allege with sufficiency the violations of the Clinic Act, the Patient Brokering Act and the Self-Referral Act, as well as the alleged violation of billing protocols under Florida's No Fault law to establish mail and wire fraud under RICO either in

Counts 2-6 pertaining to Feijo's clinic, or with respect to the remaining counts as to Feijoo's seeing patients at the other clinics.

**b.    Counts 8, 11, 15, 18, 22, 25, 29 and 32.**

Each of the above counts attempt to allege violation of RICO, and Fla. Stat. §772.103(4), against Feijoo acting with the purported principals of the four other medical practices: **We Care, New Life, Accident Rehab, and Miami Medical.**  As above, Geico has failed to allege with sufficiency the violations of the Clinic Act, the Patient Brokering Act and the Self-referral Act, as well as the alleged violation of billing protocols under Florida's No Fault law to establish mail and wire fraud under RICO or FDUPTA, etc.

Similar deficiencies resulted in the dismissal of RICO counts in the case, _Joseph v. Bernstein, et al_, U.S. Disc. Ct., Case No. 13-24355-Civ.Altonga (S. Disc. Fla. Aug. 19. 2014) ECF 39 where the Court held:

> Counts I and II do not satisfy Rule 8 because Plaintiff's allegations indiscriminately lump all five Defendants together. In Count I, Plaintiff alleges American Group engaged in various financial transactions. (_See_ Am. Compl. ¶¶ 30-41). Plaintiff then claims all Defendants "participated, either directly or indirectly" and "conspired amongst each other" to engage in this activity without articulating the factual basis for _each_ Defendant's liability. (_Id_. ¶¶ 42-43). Similarly, in Count II, Plaintiff alleges all Defendants invested or conspired to invest the proceeds of the racketeering activity without explaining the factual basis for each one's liability. (_See id_. ¶¶ 49-50). By lumping all Defendants together, Plaintiff has not "give[n] each defendant 'fair notice' of the nature of the claim and the 'grounds' on which the claim rests." _George & Co., LLC_, 2011 WL 6181940, at *2 (citation omitted; alteration added)…. Even if Plaintiff had alleged qualifying predicate acts, he has failed to show how these acts demonstrate a continuing pattern of criminal conduct. Although Plaintiff claims Defendants "conducted or participated, either directly or indirectly . . . [in] a pattern of racketeering activity" (Am. Compl. ¶ 42), "legal conclusions masquerading as facts will not prevent dismissal." _Jackson_, 372 F.3d at 1262 (internal quotations marks and citations omitted).

On June 3, 2019, Chief Judge Moore dismissed a claim by State Farm alleging FDUTPA violations as the result of a physician's submissions of allegedly incorrectly coded bills and did so

−18−

pursuant to the heightened pleading requirements for fraud.  State Farm argued that it need not

prove fraud to prevail at trial on its FDUTPA claim.  Judge Moore rejected this argument.  (See

Judge Moore's Memorandum in State Farm v. Feijoo, et. al., 18-cv-23329, ECF Doc. #56).  This

same reasoning obviously applies equally to GEICO's unjust enrichment claim, as it, too, is based

upon an alleged unified course of fraudulent conduct.

Accordingly, the Complaint should be dismissed in its entirety.

### B.  Motion to Strike

Federal Rule of Civil Procedure 12(f) permits district courts to strike from a pleading "any

redundant, immaterial, impertinent, or scandalous matter." On a motion to strike, a court has broad

discretion. *Badilo v. City of Deerfield Beach*, No. 13-60057-CIV, 2013 WL 3762338, at *1 (S.D.

Fla. July 16, 2013) (Rosenbaum, J.). Regardless of the Court's ruling on the motions of dismiss of

these and the other Defendants, the complaint is replete with allegations that are redundant,

immaterial, impertinent, or scandalous matter that should be stricken and not be allowed in any

amendment.  For example, in ¶8, it is alleged: "8. Defendants' fraudulent schemes are the latest in

a long line of insurance fraud scams aimed at Florida consumers and insurers. They are part of an

insurance fraud epidemic that – in 2014-2015 alone – led to almost 1,200 convictions in Florida.

See Florida Department of Financial Services, Division of Insurance Fraud Annual Report for

Fiscal Year 2014-2015."  This allegation does nothing to further the causes of action, and simply

attempts to paint Dr. Feijoo and the other medical providers as criminals.  Similarly, in ¶s 16-19,

it is alleged:

> 16. Defendant Machado resides in and is a citizen of Florida. Machado purported to be the owner of New Life, and used New Life as a vehicle to submit fraudulent no-fault insurance billing to GEICO and other insurers.

17. Machado has a history of involvement in insurance fraud schemes.

18. For example, on October 1, 2019, Machado was arrested in Miami and charged by the Miami-Dade State Attorney's Office with Insurance Fraud, Grand Theft, Patient Brokering, and Organized Scheme to Defraud in connection with his activities as the owner of Professional Medical Practice, a physical therapy clinic in Miami.

19. The alleged crime involved Machado offering to pay motor vehicle accident victims $2,500.00 to lie to insurance companies about receiving physical therapy services that were never provided in the first instance.

Although 16-19 do not directly relate to Feijoo, because Geico has  grouped Feijoo in with New

Life, they impact him and are not relevant to Counts 15 and 18 are against  Machado, Rodriguez,

Estevez, and Feijoo for Violation of RICO, and §772.103(4), related to allegations against the **New**

**Life** clinic.   The same rationale applies to ¶32-36.

32. For example, on March 30, 2011, the State of Florida Department of Health ("Department of Health") filed an administrative complaint with the State of Florida Board of Chiropractic Medicine in a case entitled Department of Health vs. Maria Teresa Nodarse, D.C., (the "Nodarse Action").

33. The Department of Health alleged, among other things, that: (i) Nodarse was a supervising physician of record of a certified chiropractic physician's assistant named Maria de las Mercedes Fuentes ("Fuentes") from December 2004 through May, 2006 at Santa Clara Medical Center, Inc. ("Santa Clara"); ii) The State Attorney for the Eleventh Judicial Circuit in Miami-Dade County, Florida charged Fuentes with one count of patient brokering and two counts of false/fraudulent insurance claims in connection with her work at Santa Clara. Fuentes pled guilty to all three counts; (iii) The crimes to which Fuentes pled guilty were directly related to her duties at Santa Clara while under the supervision of Nodarse.

34. Based on these allegations, the Department of Health filed the Nodarse Action against Nodarse for failing to provide the necessary supervision to Fuentes.

35. On August 2, 2011, the Nodarse Action settled, which required Nodarse, among other things, to practice under the indirect supervision of another chiropractic physician for one year.

> 36. Upon information and belief, Nodarse's history of alleged involvement in an insurance fraud scheme – which can be located by prospective employers, referral sources, and patients through a simple internet search – has made it substantially more difficult for her to obtain...

Id.  These allegations are included to make Dr. Nordase look bad for allegedly not supervising Fuentes in an earlier matter; that anyone associated with Dr. Nordase must a crook and thus these allegations are scandalous and immaterial to any of the claims made by Geico.

Additionally, all averments that related to medical treatment and bills of Feijoo that are barred by the applicable statutes of limitations, some dating back to 2013, should be stricken as immaterial.  In ¶381, for example, the complaint alleges

> 381. (i) On July 22, 2013, an Insured named JR was involved in an automobile accident. The contemporaneous police report indicated that the airbags in JR's vehicle did not deploy, and that JR's vehicle was drivable following the accident. The police report further indicated that JR was not injured in the accident. In keeping with the fact that JR was not seriously injured in the accident, JR did not visit any hospital emergency room following the accident. To the extent that JR experienced any health problems at all as the result of the accident, they were of low severity. Even so, following a purported initial examination of JR by Feijoo on July 23, 2013, Feijoo P.A. and Feijoo billed GEICO for the initial examination using CPT code 99204, and thereby falsely represented that JR presented with moderately to highly severe health problems as the result of the accident.

There are numerous other examples.  Although Geico can be permitted to allege two or more predicate acts, it purports to do so without having to go back seven years.

Striking allegations from a pleading "is a drastic remedy" that is not appropriate "**unless the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party."** _Blake v. Batmasian_, 318 F.R.D. 698, 700-01 (S.D. Fla. 2017) (Marra, J.) (Emphasis added; citations omitted); _see also Gonzalez v. Sunrise Lakes Condominium Apartments Phase III, Inc_. _4_, No. 06-61575, 2007 WL 2364050, at *4 (S.D. Fla.

Aug. 14, 2007) (Cooke, J.) (internal quotations and citations omitted). "Prejudice results when the matter complained of has the effect of confusing the issues or where it is so lengthy and complex that it places an undue burden on the responding party." *Blake*, 318 F.R.D. at 700 (internal quotations and citations omitted).

A motion to strike is appropriately granted if "the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party." *Valentine v. Legendary Marine FWB, Inc*., 309CV334/MCR/EMT, 2010 WL 1687738, at *1 (N.D. Fla. 2010). Under Rule 12(f), allegations are "immaterial" if they have "no important relationship to the claim or defense," and are "impertinent" if they do "not relate to the issue in question." *Farrell v. Florida*, 2:15-CV-41-FTM-38CM, 2015 WL 3454227, at *1 (M.D. Fla. 2015).

That is the case herein. Here, the above referenced allegations are immaterial, impertinent, or scandalous matter and should be stricken.

## **<u>CONCLUSION</u>**

 GEICO's massive complaint fails to state a cause of action and, as well-stated by the co-Defendant, Miami Medical, it is designed to avoid Florida's PIP procedures on billing disputes, and instead threaten medical provider who accept auto accident patients with professional and personal ruin by a massive federal lawsuit accusing them of criminal fraud unless they hew to *GEICO's* standard. GEICO's Complaint should be dismissed in its entirety, and should it be allowed to re-plead to strike the allegations referred to above that are immaterial and scandalous.

WHEREFORE, Defendants, Dr. Feijoo and his P.A., move to dismiss the complaint and to strike those allegations referred to above.

### CERTIFICATE OF GOOD FAITH CONFERRAL

In accordance with the Local Rules, the undersigned did confer with opposing counsel regarding the motion to strike but was unable to resolve any issues related to that aspect of this motion.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on Aug 3, 2020, I have filed the foregoing document with the Clerk of Court using the CM/ECF system and that a copy was electronically served upon all persons on the below service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing

**THE PIVNIK LAW FIRM**
7700 N. Kendal Drive, Suite 703
Miami, FL 33156
Tel: 305-670-0095
Email: Pivniklaw@aol.com
　　　　 Jpivnik@Pivniklaw.com


By: _**/s/ Jerome A. Pivnik**_
　　 Jerome A. Pivnik, Esq.
　　 Fla. Bar No.: 400408

–23–

**SERVICE LIST**

**For Plaintiffs:**

John P. Marino (FBN 814539)
Lindsey R. Trowell (FBN 678783)
Kristen Wenger (FBN 92136)
SMITH, GAMBRELL & RUSSELL, LLP
50 North Laura Street, Suite 2600
Jacksonville, Florida 32202
Phone: (904) 598-6100
Facsimile: (904) 598-6204
ltrowell@sgrlaw.com
jmarino@sgrlaw.com
kwenger@sgrlaw.com


Yonatan Bernstein
RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New York 11550
Phone: (516) 357-3000
Facsimile: (516) 357-3333
max.gershenoff@rivkin.com
yonatan.bernstein@rivkin.com

**For Defendants:**   WE CARE MEDICAL SERVICES, INC, and MANUEL MARTINEZ VARELA

Law Offices of Carlos Cruanes, P.A.
815 N.W. 57th Avenue, Suite 401
Miami, Florida 33126
Telephone: (786) 378-8189
Facsimile: (305) 631-1816


**For Defendants:**   ALEJANDRO VASQUEZ, MARIA VASQUEZ, ACCIDENT REHAB ASSOCIATES INC, d/b/a AMERICAN MEDICAL & REHAB CENTER,

–xxiv–

and ERICK SALADO, MD.,

Ronald E. D'Anna
Florida Bar No.: 357405
D'ANNA LEGAL, PLLC
2000 Glades Road, Suite 300
Boca Raton, Florida 33431
Telephone: (561) 962-6563, (561) 866-6122
rdanna@dannalegal.com; lheron@dannalegal.com

**For Defendants:**   Miami Medical Group, Inc., Juan Jimenez, Graciela Jimenez, Jose Marquez, M.D., Maria Nodarse, D.C., Yara Vazquez and Hai Uzan (hereinafter collectively "Miami Medical")

Kenneth Schurr, Esq.
2030 S. Douglas Rd.
Coral Gables, FLA 33134

Andrew P. Baratta, Esq.
Baratta, Russell & Baratta
3500 Reading Way
Huntingdon Valley, Pa. 19006
215-914-2222
215-914-2118 (facsimile)
andrew@barattarussell.com

**For Defendants:**   New Life Clinical Services, Inc.

Alexander Alvarez, Esq.
The Alvarez Law Firm
3251 Ponce de Leon Blvd, Coral Gables, FL 33134
Alex@AAlvarezlawfirm.com
Anamaire@AAlvarezlawfirm.com