UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.: 1:20-cv-22044-MARTINEZ/OTAZA-REYES

GOVERNMENT EMPLOYEES INSURANCE
CO., GEICO INDEMNITY CO., GEICO
GENERAL INSURANCE COMPANY and
GEICO CASUALTY CO.,

    Plaintiffs,

vs.

MANUEL FEIJOO, M.D., MANUEL V.
FEIJOO, M.D. P.A., WE CARE MEDICAL
SERVICES, INC, MANUEL MARTINEZ
VARELA, TONY NGUYEN, M.D., NEW
LIFE CLINICAL SERVICES, INC, ALEAN
MACHADO, CARLOS ALMONTE, M.D.,
JOSE ESTEVEZ, YOANDRA RODRIGUEZ,
ACCIDENT REHAB ASSOCIATES INC,
d/b/a AMERICAN MEDICAL & REHAB
CENTER, ALEJANDRO VAZQUEZ, MARIA
VAZQUEZ, ERICK SALADO, M.D., MIAMI
MEDICAL GROUP, INC, JUAN JIMENEZ,
GRACIELA JIMENEZ,  JOSE MARQUEZ,
M.D., MARIA NODARSE, D.C., YARA
VAZQUEZ, and HAI UZAN.

    Defendants.
_____/

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MANUEL V. FEIJOO, M.D. AND
MANUEL V. FEIJOO, M.D., P.A.'S MOTION TO DISMISS AND TO STRIKE**

Plaintiffs, Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co. (collectively "GEICO" or "Plaintiffs") respectfully submit this memorandum in opposition to the motion by Defendants Manuel V. Feijoo M.D. ("Feijoo"), and Manuel V. Feijoo, M.D., P.A. ("Feijoo P.A.") (collectively the "Feijoo Defendants"), to dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b); and motion to strike pursuant to Fed. R. Civ. P. 12(f). See Docket No. 38.[1]

As discussed below, the Feijoo Defendants' arguments for dismissal ignore the detailed facts set forth in the Complaint and are at odds with the pertinent law, including the law that has developed in numerous, highly analogous no-fault insurance ("personal injury protection" or "PIP") fraud cases in the 11th Circuit, in Florida state appellate courts, and across the country.

Aside from their misleading recharacterization of GEICO's allegations, the Feijoo Defendants' motion relies on an equally inaccurate interpretation of the pertinent law – including a number of legal contentions that repeatedly have been raised in the past by defendants in substantially similar no-fault insurance fraud cases, and repeatedly rejected by the federal courts, including this Court. Indeed, the Feijoo Defendants somehow manage to avoid citing to any of the many federal (and Florida appellate) decisions – in substantially similar anti-PIP fraud cases, that decisively refute every one of their arguments. As discussed herein, the Feijoo Defendants' motion to dismiss therefore should be denied in its entirety.

## BACKGROUND

GEICO commenced this action on May 15, 2020. See Docket No. 1. Because it is impossible to describe every aspect of the very detailed Complaint in a relatively brief

---

[1] As the Court may note, the Feijoo Defendants obtained permission to file a 22 page motion to dismiss but failed to mention they were going to "adopt[] and incorporate" 11 pages of the separate motion to dismiss filed by Miami Medical Group, Inc., Juan Jimenez, Graciela Jimenez, Jose Marquez, M.D., Maria Nodarse, D.C., Yara Vazquez and Hai Uzan (collectively the "Miami Medical Defendants") into their own brief. See Docket No. 38, p. 5. In this context, courts have counted arguments that similarly purport to be "incorporated by reference" against a movant's page limits, and have disregarded such arguments where they exceed the page limits. See, e.g., Government Employees Insurance Co. et al v. Path Medical, et al., M.D. Fla. Case No. 17-cv-2848-T-17TGW, at Docket No. 79. However, to the extent this Court allows the Feijoo Defendants to "adopt[] and incorporate" the Miami Medical Defendants' arguments, GEICO respectfully "adopts and incorporates" its own arguments from its opposition to the Miami Medical Defendants motion to dismiss into this opposition brief. See Docket No. 27.

memorandum of law, GEICO respectfully refers the Court to the Complaint for the full contours of Defendants' interrelated fraudulent schemes.

Briefly, however, GEICO alleges in this action that Feijoo – a medical doctor – owned Feijoo P.A., and also purported to provide a significant amount of healthcare services at Feijoo P.A., We Care Medical Services, Inc ("We Care"), New Life Clinical Services, Inc ("New Life"), Accident Rehab Associates Inc d/b/a American Medical & Rehab Center ("Accident Rehab"), and Miami Medical Group, Inc ("Miami Medical") (collectively the "Clinic Defendants"), a series of healthcare clinics that purported to provide healthcare services (the "Fraudulent Services") to GEICO insureds, and then billed GEICO for the Fraudulent Services as the assignees of the GEICO insureds' no-fault ("personal injury protection" or "PIP") insurance benefits ("PIP Benefits"). See Docket No. 1, passim.

As set forth in exacting detail in GEICO's Complaint, all of the PIP billing that Feijoo, the Clinic Defendants, and their co-Defendants submitted or caused to be submitted to GEICO falsely represented that the Clinic Defendants were operating in compliance with Florida law, and that their PIP charges for the Fraudulent Services were lawful and eligible for reimbursement. See Docket No. 1, ¶¶ 873-874, and passim. In fact, the Clinic Defendants were not operating in compliance with Florida law, and their PIP charges were not lawful or eligible for reimbursement, because:

(i) a) Feijoo P.A., We Care, New Life, Accident Rehab, and Miami Medical operated in violation of the licensing and operating requirements set forth in the Florida Health Care Clinic Act, Fla. Stat. § 400.990 et seq. (the "Clinic Act"); b) Feijoo P.A., We Care, and New Life operated in violation of Florida's patient brokering act, Fla. Stat § 817.505 (the "Patient Brokering Act"); and c) Feijoo P.A. operated in violation of Florida's Patient Self-Referral Act, Fla. Stat. § 456.053 (the "Self-Referral Act"). These violations rendered the Clinic Defendants ineligible to collect PIP Benefits in the first instance, and rendered their PIP insurance charges noncompensable and unenforceable. (see Docket No. 1, passim).

(ii) The underlying Fraudulent Services were not medically necessary, and were provided – to the extent that they were provided at all – in pervasive violation of the Clinic Act, the Self-Referral Act, and the Patient Brokering Act, and pursuant to a pre-determined fraudulent protocol designed to solely to financially enrich the Defendants, rather than to treat or otherwise benefit the GEICO insureds who purportedly were subjected to it (see Docket No. 1, passim).

(iii) In many cases, the Fraudulent Services never were provided in the first instance, and the billing codes used for the Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provide in order to fraudulently inflate the charges submitted to GEICO (see Docket No. 1, ¶¶ 81-872).

(iv)  In many cases, the Fraudulent Services provided by Feijoo at We Care, New Life, Accident Rehab, and Miami Medical were not reimbursable as a matter of Florida law, because they were provided – to the extent that they were provided at all – by unsupervised massage therapists, and Florida law prohibits no-fault insurance reimbursement for massage or for services provided by unsupervised massage therapists (see Docket No. 1, ¶¶ 157-331).

(v)  In many cases, the Fraudulent Services provided by Feijoo at We Care, New Life, Accident Rehab, and Miami Medical were not reimbursable as a matter of Florida law, because they were provided – to the extent that they were provided at all – by unsupervised individuals, including masseuses and chiropractic assistants, who lacked the licenses necessary to perform the services without supervision (see Docket No. 1, ¶¶ 157-331).

(vi)  In many cases, Feijoo's charges for the Fraudulent Services at We Care, New Life, Accident Rehab, and Miami Medical misrepresented the identity of the person who performed the services, in order to conceal the fact that the Fraudulent Services had been performed by unsupervised massage therapists or chiropractic assistants, and therefore were ineligible for PIP reimbursement (see Docket No. 1, ¶¶ 157-331).

At bottom – and as alleged in granular detail in the Complaint – GEICO alleges that the Feijoo Defendants and the other Clinic Defendants variously pervasively billed inflated amounts for medically unnecessary and illusory services, unlawfully misrepresented the identities of the actual service providers, concealed the fact that they were unlawfully billing GEICO for "physical therapy" services that were performed – to the extent that they were performed at all – by unsupervised massage therapists and/or chiropractic assistants, and operated in pervasive violation of the Self-Referral Act and Patient Brokering Act. See Docket No. 1, ¶¶ 873-884, and passim.

Relatedly, GEICO alleges that Feijoo P.A. failed to qualify for exemption from the health care clinic licensure requirements and, as a result, operated as an unlicensed health care clinic in violation of the Clinic Act. See Docket No. 1, ¶¶ 83-88, and passim. By extension, GEICO alleges that the Feijoo Defendants' PIP billing falsely represented that the Fraudulent Services billed through Feijoo P.A. were lawfully provided, and that Feijoo P.A. was entitled to reimbursement on the charges, when in fact it was not. Id. In addition, GEICO alleges that We Care, New Life, Accident Rehab, and Miami Medical operated without legitimate medical directors as required by the Clinic Act, because any legitimate medical directors would have observed and put an end to the pervasive fraud and unlawful activity. See Docket No. 1, ¶¶ 89-156, and passim. By extension, GEICO alleges that all of We Care, New Life, Accident Rehab, and Miami Medical's PIP billing – a significant amount of which was submitted in connection with healthcare services provided by

Feijoo – falsely represented that they were eligible to receive PIP reimbursement, when in fact they were not eligible to receive PIP reimbursement because – in violation of the Clinic Act – they operated without legitimate medical directors who legitimately fulfilled their statutory duties as clinic medical directors. Id.

Based on these allegations – which are pleaded in exacting detail – GEICO asserts claims against the Feijoo Defendants for, variously, civil RICO violations under 18 U.S.C. § 1962(c), violations of the Florida Deceptive and Unfair Trade Practices Act (the "FDUTPA"), violations of the Florida Civil Remedies for Criminal Practices Act (the "FCRCPA"), common law fraud, and unjust enrichment. See Docket No. 1, ¶¶ 889-1133. In addition, GEICO seeks a declaratory judgment to the effect that it is not liable to pay any of the more than $75,000.00 in outstanding and unpaid billing that the Feijoo Defendants submitted through Feijoo P.A. and the other Clinic Defendants, because of the fraud and unlawful conduct alleged in the Complaint. See Docket No. 1, ¶¶ 885-888.

## ARGUMENT

### I. The Feijoo Defendants' Motion Should be Denied to the Extent That it Seeks Dismissal of Plaintiffs' Complaint Pursuant to Rule 12(b)(6)

As discussed below, none of the Feijoo Defendants' arguments for dismissal has any merit. Indeed, virtually identical anti-PIP fraud complaints asserting identical causes of action – and even anti- PIP fraud complaints with a substantially lesser amount of detail – repeatedly have been held sufficient by federal courts, both within and outside of the Eleventh Circuit, including in this Court.

### A. Though the Feijoo Defendants Attempt to Mischaracterize GEICO's Allegations and the Pertinent Law Regarding PIP Billing for Unsupervised Massage Therapists and/or Chiropractic Assistants, GEICO's Actual Allegations are Legally Sufficient and Totally Plausible

As set forth in GEICO's Complaint, and as summarized above, Feijoo, We Care, New Life, Accident Rehab, Miami Medical and their co-Defendants unlawfully billed GEICO for putative "physical therapy" services that were performed – to the extent that they were performed at all – by massage therapists and/or chiropractic assistants, who were unsupervised and who held no physical therapy licenses. To make it appear as if the services were eligible for PIP reimbursement, Feijoo, We Care, New Life, Accident Rehab, Miami Medical and their co-Defendants falsely represented – in their billing for the services – that Feijoo personally performed or directly supervised the "physical therapy" services, which made it appear as if the purported services were

5

eligible for PIP reimbursement, when in fact they were not. In fact – and as set forth in detail in GEICO's Complaint – Feijoo could possibly have performed or even supervised the "physical therapy" services that were billed through We Care, New Life, Accident Rehab, or Miami Medical to GEICO, especially considering his incredibly crowded work schedule and the superhuman amount of individual healthcare services that he purported to perform on individual dates. See Docket No. 1, ¶¶ 158-331, and passim.

In an attempt to rebut GEICO's claims, the Feijoo Defendants (by adopting the Miami Medical Defendants' arguments) embark on a tortured analysis of the PIP statute and the Medicare Claims Processing Manual (the "Medicare Manual").[2] See Docket No. 24, pp. 9-16, and passim and Docket No. 38, pp. 6-8. Though it is difficult to follow their argument, the Feijoo Defendants appear to contend that it was totally lawful for them to represent – in their billing for the "physical therapy" services – that Feijoo supervised the services, because Feijoo supposedly provided some level of "general" or indirect supervision to massage therapists and/or chiropractic assistants who performed the "physical therapy" services at We Care, New Life, Accident Rehab, and Miami Medical. See id.

If this is what the Feijoo Defendants are driving at, they are incorrect. First, and most generally, the Feijoo Defendants' argument is at odds with the actual allegations in the Complaint, which are entitled to every favorable inference on this motion to dismiss. GEICO not only alleges that Feijoo failed to "directly" supervise the purported physical therapy services, but GEICO very plausibly alleges that Feijoo failed to provide any supervision with respect to the purported physical therapy services. See Docket No. 1, ¶¶ 158-331. Indeed, GEICO alleges detailed facts to demonstrate that Feijoo – who was purporting to work a superhumanly-crowded schedule, typically at multiple locations, on the same dates when he was purporting to oversee massive amounts of "physical therapy" at We Care, New Life, Accident Rehab, Miami Medical – could not possibly have supervised any of the purported physical therapy at We Care, New Life, Accident Rehab, Miami Medical. Id. Accordingly, the Feijoo Defendants' "direct vs. general" supervision argument that they adopt from the Miami Medical Defendants is a red herring.

---

[2] Because the Feijoo Defendants purport to adopt, by reference, large portions of the motion to dismiss filed by the Miami Medical Defendants, when GEICO cites to a specific argument adopted by the Feijoo Defendants, the reference will be to the original motion to dismiss filed by the Miami Medical Defendants at Docket No. 24.

Second, and in any case, the Feijoo Defendants' strained analysis of the PIP statute and the Medicare Manual is at odds with the plain language of the Medicare Manual and the relevant law. As set forth in GEICO's Complaint, We Care, New Life, Accident Rehab, Miami Medical billed for all of their purported "physical therapy" services using HCFA-1500 forms, which had to be completed in accordance with the Medicare guidelines. See Docket No. 1, ¶¶ 44, 80, 158-331, and passim. Pursuant to the instructions promulgated by the Centers for Medicare & Medicaid Services for the completion of HCFA-1500 forms, to the extent that a physician is not actually "directly supervising" a physical therapy treatment, then the actual name of the person who is actually performing or directly supervising the physical therapy treatment must be listed on the HCFA-1500 form. Id.[3]

Though the Feijoo Defendants struggle to find some ambiguity in the Medicare Manual, the Medicare Manual and the PIP statute are perfectly clear. So clear, in fact, that: (i) numerous federal courts within the 11th Circuit – including this Court – have sustained identical RICO and other fraud-based claims based on allegations that a healthcare clinic billed for "physical therapy" performed by unsupervised masseuses, and then falsely represented in its HCFA-1500 billing that a physician directly (or indirectly) supervised the masseuses; and (ii) the Florida Third District Court of Appeals recently denied PIP reimbursement to a healthcare clinic that falsely listed a physician on HCFA-1500 forms as the "direct supervisor" of purported physical therapy services, and unambiguously held that the Florida PIP statute precludes any reimbursement for any services that are performed by massage therapists. See, e.g., Government Employees Ins. Co., et al. v. Luis Lopez Mas, M.D. et al., S.D. Fla. Case No. 19-cv-21183-KMW, at Docket No. 71, pp. 7-13 (sustaining virtually identical PIP fraud and racketeering claims based on virtually identical allegations to the effect that defendants falsely represented, in their PIP billing, that a physician

---

[3] See, e.g., Medicare Claims Processing Manual, Chapter 26 – Completing and Processing Form CMS-1500 Data Set, Item 31 (requiring that the "provider" or "supplier" of the underlying healthcare service, or its representative, sign in box 31 of a HCFA-1500 bill, and further providing that "In the case of a service that is provided incident to the service of a physician or nonphysician practitioner, when the ordering physician or non-physician practitioner is directly supervising the service as in 42 CFR 410.32, the signature of the ordering physician or non-physician practitioner shall be entered in item 31. When the ordering physician or non-physician practitioner is not supervising the service, then enter the signature of the physician or non-physician practitioner providing the direct supervision in item 31.")

7

had supervised the "physical therapy" services at issue, when in fact the services had been performed by unsupervised massage therapists); Gov't Emples. Ins. Co. v. Quality Diagnostic Health Care, Inc., 369 F. Supp. 3d 1292, 1299-1301 (S.D. Fla. 2019)(Martinez, J.)(same)[4]; Government Employees Insurance Co. et al. v. DG Esthetic and Therapy Center, Inc. et al., S.D. Fla. Case No. 1:18-cv-20921-CMA, at Docket Nos. 21, 29, 31 (same); Government Employees Ins. Co., et al. v. Alternative Medical Center of Florida, Inc., et al., S.D. Fla Case No. 1:17-cv-21375-RNS, at Docket No. 17 (same); Gov't Emples. Ins. Co. v. A&C Med. Ctr. Servs., Corp., 2019 U.S. Dist. LEXIS 133568 (S.D. Fla. 2019)(Martinez, J.)(same, although the Court ordered GEICO to file a shorter version of its complaint, and then ordered the Defendants to answer the amended complaint within 10 days – rather than file another motion to dismiss – "[b]ecause the Court rejects Defendants' substantive arguments" for dismissal)[5]; Geico Gen. Ins. Co. v. Beacon Healthcare Ctr.

---

[4] Notably, after this Court denied the Quality Diagnostic defendants' motion to dismiss, it ultimately granted GEICO summary judgment on its fraud, FDUTPA, and unjust enrichment claims. See Gov't Emples. Ins. Co. v. Quality Diagnostic Health Care, 2019 U.S. Dist. LEXIS 220674 (S.D. Fla. 2019). Thereafter, the Quality Diagnostic defendants moved to vacate or alter the judgment. See Quality Diagnostic, S.D. Fla. Case No. 1:18-cv-20101-JEM, at Docket No. 152. In their motion to vacate or alter the judgment, the Quality Diagnostic defendants raised – among other things – the exact same arguments as the Feijoo Defendants (by adopting the Miami Medical Defendants' arguments) in the present case, to the effect that "direct" supervision by a licensed physician is not required, and a healthcare clinic may lawfully bill for "physical therapy" services performed by a massage therapist, so long as the massage therapist was "indirectly" or generally supervised by a licensed physician. See id., pp. 2-6. GEICO opposed the Quality Diagnostic defendants' motion to vacate or alter the judgment, noting – just as it has in the present case – that there is no legal authority to support that proposition, which in any event is contrary to common sense. See Quality Diagnostic, at Docket No. 163, pp. 12-14. Though this Court ultimately denied the Quality Diagnostic defendants' motion to vacate or alter the judgment because it was procedurally improper, this Court also "agree[d] with Plaintiffs that the Motion is meritless … ." See Quality Diagnostic, at Docket No. 165.

[5] GEICO is aware of the fact that its Complaint in the present case – like its complaint in the A&C Med. Ctr. Case – is lengthy and detailed. GEICO respectfully submits that the length and detail are warranted by: (i) the multifaceted nature of the alleged fraud; (ii) the number of interrelated Defendants; and (iii) the need to plead the fraud-based claims in accordance with Rule 9(b). As set forth herein, numerous courts in the 11th Circuit have sustained PIP fraud and racketeering complaints pleaded in a similar manner, with a similar length and level of detail. However, to the extent that the Court finds it warranted, GEICO is prepared to file a shorter version of its Complaint. If the Court orders GEICO to file a shorter version of the Complaint, GEICO respectfully submits that – as in the A&C Med. Ctr. case – the Court should order the Defendants to answer the Complaint, rather than file further motions to dismiss.

Inc., 2020 Fla. App. LEXIS 2284 (Fla. 3d DCA 2020)("the PIP statute . . . precludes reimbursement [for] massage therapists" who are performing physical therapy services); see also S. Owners Ins. Co. v. Hendrickson, 2020 Fla. App. LEXIS 6631 (Fla. 5th DCA 2020), where the court reached the same conclusion as in Beacon and held that the PIP statute "precludes a licensed massage therapist from being reimbursed for medical benefits". Id. at *2.

Not only is the Feijoo Defendants' "direct vs. general" supervision at odds with the actual allegations in the Complaint, and the weight of federal authority sustaining virtually identical PIP fraud claims based on virtually identical allegations, but it also is at odds with basic common sense. At bottom, if the Court were to credit the Feijoo Defendants' "general" or indirect supervision argument, then it would mean that a single physician could stand in the middle of downtown Miami with a cellphone in his or her hand, "generally supervise" hundreds – or even thousands – of individual massage therapists performing physical therapy services within a 20-mile or 30-minute radius of that spot, and have those services be considered part of the physician's practice of medicine, rather than noncompensable massage. This is not the law, and the Court should decline the Feijoo Defendants' invitation to create such a rule.

**B.      The Feijoo Defendants' "Reliance" Argument is Meritless**

The Feijoo Defendants – by adopting the Miami Medical Defendants' arguments – go on to argue that GEICO's Complaint should be dismissed because GEICO did not justifiably rely on any misrepresentations.[6] See Docket No. 24, pp. 17-19 and passim. At bottom, the Feijoo Defendants posit that, because GEICO supposedly knew (or at least had inquiry notice) that the billing submitted by the Feijoo Defendants was fraudulent, but paid the charges anyway, GEICO's reliance could not have been justifiable. Id.

The Feijoo Defendants are incorrect, for several reasons. First, and most generally, reliance is a fact-intensive issue that is not properly resolved on a motion to dismiss pursuant to Rule 12(b)(6). See, e.g., Luis Lopez Mas, supra, at Docket No. 71, pp. 14-17 (rejecting identical "reliance" argument, in a substantially similar PIP fraud and racketeering case, and holding that "it is inappropriate at this juncture to decide as a matter of law exactly when GEICO would have

---

[6]The Feijoo Defendants do not articulate which counts they seek to dismiss based on their "justifiable reliance" argument. To the extent the Feijoo Defendants are using the "justifiable reliance" argument to seek dismissal of GEICO's FDUTPA and unjust enrichment claims, the court should reject this argument because reliance is not an element of FDUTPA or unjust enrichment claims.

9

been on notice of any fraud, a highly fact intensive inquiry best reserved for a trier of fact at trial.")(Internal quotations omitted). In this context, it would be especially inappropriate to dismiss based on the Feijoo Defendants' reliance argument, because the argument is predicated on conclusory speculation about what GEICO knew, and when GEICO knew it. In actuality, GEICO has pleaded facts to demonstrate that the Feijoo Defendants acted to conceal their interrelated fraudulent schemes, that GEICO was under statutory and contractual obligations to promptly and fairly process claims within 30 days, and that the facially-valid documents submitted to GEICO in support of the fraudulent charges at issue, combined with the material misrepresentations and acts of concealment described above, were designed to and did cause GEICO to rely upon them. See Docket No. 1, ¶¶ 875-884, and passim. It is GEICO's detailed allegations – and not the Feijoo Defendants' conclusory statements – that are entitled to the benefit of every reasonable inference on this motion to dismiss.

Second, and in any case, GEICO was entitled – as a matter of law – to rely on the representations in the Feijoo Defendants' PIP claims, as this Court itself has observed. See, e.g., Quality Diagnostic Health Care, at Docket No. 125, p. 18 (rejecting similar "reliance" arguments in context of summary judgment motions, and noting that "GEICO was entitled to rely upon Defendants' PIP claims"). Were it otherwise, then every fraudulent PIP claimant would have a complete defense to a plaintiff-insurer's fraud claim simply by virtue of the fact that the insurer paid the claim.

Third, in keeping with the fact that GEICO was entitled to rely on the representations in the Feijoo Defendants' PIP claims, the No-Fault Law explicitly permits plaintiff-insurers to challenge fraudulent or unlawful PIP claims at any time, even after they are paid. See Fla. Stat. § 627.736(4)(b)(6)(permitting insurers to assert that PIP claims were medically unnecessary, fraudulent, unlawful, upcoded, etc., **"at any time, including after payment of the claim"**).

Accordingly, the Feijoo Defendants' "reliance" argument is meritless, and their motion to dismiss should be denied.

**C.     The Feijoo Defendants' FDUTPA and "Reasonableness" Arguments are Meritless**

Along similar lines, the Feijoo Defendants contend – in totally conclusory fashion – that GEICO's FDUTPA claims should be dismissed because GEICO supposedly has not sufficiently alleged that the Feijoo Defendants' deceptive practices would be likely to deceive a reasonable consumer. See Docket No. 38, p.9. Again, however, questions regarding whether a reasonable

consumer would be deceived by the Feijoo Defendants' deceptive practices are not properly resolved via a motion to dismiss pursuant to Rule 12(b)(6).

Indeed, it is worthwhile to note that courts within the 11th Circuit have denied motions to dismiss plaintiff-insurers' FDUTPA claims that were predicated on substantially identical facts, as set forth in complaints that were in all material respects substantially identical to the Complaint in the present case. See, e.g., Alternative Medical Center of Florida, Inc., supra, at Docket No. 17 (denying motion to dismiss virtually identical FDUTPA claim in substantially identical complaint alleging upcoded examination charges/billing for unsupervised massage therapists); DG Esthetic, supra at Docket No. 29 (same); Luis Lopez Mas, M.D., supra at Docket No. 71, p. 16 (same, and rejecting a "reasonable consumer" argument that is identical to the argument raised by the Feijoo Defendants herein).

**D.     GEICO Has Pleaded its Fraud-Based Claims with the Requisite Specificity**

The Feijoo Defendants also argue that GEICO's fraud-based claims are not pleaded with the requisite particularity under Rule 9(b). See Docket No. 38, pp. 4-6, 8-9, 13, 16, 18-19, and passim. The Feijoo Defendants are incorrect, and ignore the weight of authority from district courts within the 11th Circuit, including this Court, in which anti-PIP fraud complaints with a virtually identical, or even lesser, amount of detail were held sufficient under Rule 9(b).[7] See, e.g., DG Esthetic, supra at Docket Nos. 21, 22, 29 (denying motion to dismiss GEICO's fraud-based claims – which were pleaded with an identical level of detail as the allegations in the present case – based on argument that the complaint was insufficiently particularized under Rule 9(b). See A&C Medical Center, supra at *4 (S.D. Fla. 2019)(Martinez, J)(same); Luis Lopez Mas, M.D., supra at Docket No. 71 (same); Alternative Medical Center of Florida, Inc., supra at Docket No. 17, p. 5 (holding that "GEICO's comprehensive and granularly specific 119-page complaint" – which was pleaded with a format and level of detail that is virtually identical to the Complaint in the present case – "sufficiently states a cause of action for each of its seven counts.")

At bottom, any fair reading of the Complaint should leave the respective Feijoo Defendants with no doubt as to their individual roles in the fraudulent scheme. For example, and as discussed

---

[7]The Feijoo Defendants' reference to State Farm v. Feijoo, et. al., 18-cv-23329, ECF Doc. No. 56 is inapposite. See Docket No. 38, pp. 18-19. While the Feijoo court dismissed the plaintiff-insurer's claims for being insufficiently specific under Rule 9(b), GEICO's Complaint in the present case is much more detailed and particular than the State Farm v. Feijoo complaint , and easily meets the Rule 9(b) standard.

above, the Feijoo Defendants are alleged to have submitted fraudulent billing through Feijoo P.A. to GEICO, with Feijoo directing the affairs of the Feijoo P.A. enterprise.[8] Additionally, Feijoo is also alleged to have falsely purported to supervise a superhuman amount of "physical therapy" services, and to have pervasively billed inflated amounts for medically unnecessary and illusory services at We Care, New Life, Accident Rehab, and Miami Medical. See Docket No. 1, ¶¶ 1-80, 89-363, 521-884. This is more than sufficient to satisfy Rule 9(b).

Relatedly, the Feijoo Defendants contend that GEICO's allegations improperly "lump" Feijoo together with We Care, New Life, Accident Rehab, Miami Medical, and their co-defendants, – "merely because he saw patients at their clinic" – and therefore amounts to an improper "group pleading". See Docket No. 38, p.13.

Again, the Feijoo Defendants are incorrect. As discussed above, any fair reading of GEICO's Complaint should leave Feijoo no doubt as to what he is alleged to have done. For instance, the Complaint clearly alleges that Feijoo falsely represented that he supervised the massage therapists and/or chiropractic assistants when they performed medically unnecessary "physical therapy" services at We Care, New Life, Accident Rehab, and Miami Medical, and that he did so with the knowledge that the resulting bills would falsely represent: (i) that the "physical therapy" was medically necessary; (ii) that Feijoo supervised these unsupervised providers when they performed the "physical therapy"; and (iii) that the "physical therapy" therefore was eligible for PIP reimbursement, when in fact it was not. Additionally, the Complaint also clearly alleges that Feijoo performed and billed for medically unnecessary and illusory services at We Care, New Life, Accident Rehab, and Miami Medical, that Feijoo unlawfully referred patients from Feijoo P.A. to both We Care and New Life in exchange for compensation from We Care and New Life, and that he did so with the knowledge that the resulting bills would falsely represent: (i) that the healthcare services were medically necessary and actually provided; (ii) that the referrals to We Care and New Life were lawful, when in fact they violated the Patient Brokering Act; and (iii) that the healthcare services were eligible for PIP reimbursement, when in fact they were not. See Docket No. 1, passim.

---

[8] The Feijoo Defendants suggest – in passing – that GEICO's Complaint is somehow defective because it uses phrases such as "in many cases" and "to the extent they were provided at all", which therefore "create[s] multiple theories of fraud." See Docket No. 38, p. 9-10. While it is unclear what the Feijoo Defendants are driving at, as discussed herein numerous federal courts – including this Court – have sustained substantially similar PIP fraud claims, pleaded in a substantially similar manner as the claims in the present case.

12

What is more, the Complaint identifies the billing codes used to bill for Feijoo's fraudulent services, and the spreadsheet attached as Exhibits "2" - "5" to the Complaint set forth a large, representative sample of the predicate acts of mail fraud in which Feijoo – together with his co-Defendants – engaged.

This is sufficient at the pleading stage. See, e.g., Government Employees Insurance Co. et al v. Cereceda, et al., S.D. Fla. Case No. 19-cv-22206, at Docket Nos. 57, 72 (in case featuring very similar anti-PIP fraud complaint, pleaded with the same level of particularity as GEICO's Complaint in the present case, denying motion to dismiss where defendants similarly argued that GEICO had not sufficiently pleaded fraud claims against the employees of health care clinics); DG Esthetic, supra (denying motion to dismiss substantially similar complaint with virtually identical level of detail, pleaded in a substantially identical manner); Luis Mas, M.D., supra (finding a similar "group pleading" argument unpersuasive and held that while "GEICO lumped the Defendants together in certain portions of [the Complaint], this does not negate the fact that GEICO has still alleged specific instances of conduct sufficient to inform each Defendant of its individual role in the alleged scheme.")[9][10]

### F. Defendants' Arguments Regarding GEICO's Self-Referral and Patient Brokering Allegations Lack Merit

The Feijoo Defendants go on to contend in a totally conclusory fashion that GEICO has not pleaded their violations of the Self-Referral Act and Patient Brokering Act with the requisite particularity under Rule 9(b). See Docket No. 38, pp. 11-12. As the Court may note, other than a confounding attempt to equate GEICO's Complaint with a criminal indictment, and thereby create

---

[9] The Feijoo Defendants cite to Joseph v. Bernstein, et al, U.S. Disc. Ct., Case No. 13-24355-Civ.Altonga (S. Disc. Fla. Aug. 19. 2014) at Docket No.39 in support of their "group pleading" argument. See Docket No. 38, pp. 18-19. However, the Bernstein case is inapposite because the plaintiffs in that case failed to "articulate the factual basis for each Defendant's liability. Bernstein at * 10. However, as set forth throughout this brief and in the Complaint, GEICO indeed does "articulate the factual basis for each Defendant's liability", including Feijoo's.

[10] The Feijoo Defendants generally and incorrectly posit that GEICO fails to allege that the Feijoo Defendants violated the Clinic Act, Patient Brokering Act, and Self-Referral Act with the requisite "sufficiency". See Docket No. 38, pp. 16-19. For instance, the Feijoo Defendants argue that because GEICO did not allege its claims with the requisite "sufficiency", it therefore failed to establish "mail and wire fraud under RICO". Id. at 17. In fact, GEICO's Complaint – which is based on a detailed factual narrative and includes many claim-specific examples of the unlawful referrals – is more than "sufficient" to state its claims. See Docket No. 1, ¶¶ 372-398, and passim.

a new pleading standard out of whole cloth, the Feijoo Defendants never get around to explaining how GEICO's self- referral and patient brokering allegations are somehow lacking.

In fact, GEICO's Complaint sets forth detailed facts in support of its patient brokering and self-referral allegations, including numerous, claim-specific examples. See Docket No. 1, ¶¶ 372-398. Against this backdrop, GEICO respectfully submits that its claims are totally plausible and legally sufficient. In any case, the Feijoo Defendants' violations of the Self-Referral Act and Patient Brokering Act – while unlawful – is not the actual fraud alleged in GEICO's Complaint. Rather, the fraud alleged in the Complaint is the submission of PIP charges to GEICO which misrepresented, among other things, that Clinic Defendants were operating in compliance with Florida law and were eligible to collect PIP benefits in the first instance, when in fact they were not. While GEICO was obligated to plead Defendants' fraudulent misrepresentations with particularity (and has done so), the balance of GEICO's allegations – including its allegations regarding the Feijoo Defendants' violations of the Patient Brokering Act and Self-Referral Act – are subject to the notice pleading requirements of Rule 8. In fact, this Court – in Quality Diagnostic – rejected an identical argument, to the effect that GEICO's patient brokering allegations were insufficiently particularized. See, e.g., 369 F. Supp. 3d at 1295-1296; see also State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C., 2008 U.S. Dist. LEXIS 71156 (E.D.N.Y. 2008)(rejecting similar argument for dismissal, and noting that it was the predicate acts of mail fraud, rather than the underlying kickbacks and other regulatory violations, that had to be pleaded with particularity under Rule 9(b)).

### G. None of GEICO's Claims in This Action are Precluded

The Feijoo Defendants' also contend that the "Court should abstain from litigating what is essentially a billing dispute….[that] has been litigated in state court. See Docket No. 38, p.12. To the extent the Feijoo Defendants are arguing that GEICO's claims should be precluded, the Feijoo Defendants are wrong. Indeed, the Feijoo Defendants have not identified a single state court verdict or settlement that GEICO actually seeks to overturn in this action, nor do they point to anything on the face of the Complaint or in the public record that would support their conclusory argument. The reason for this is simple: The plain language of the Complaint makes it clear that GEICO is seeking to recover the money it voluntarily paid in reliance on the Defendants' fraudulent billing, not money that was paid pursuant to any unspecified state court PIP lawsuits.[11]

---

[11] This is an argument that has been rejected by courts in this district and throughout the 11th Circuit. See, State Farm Mut. Ins. Co. v. Advanced Chiropractic & Med. Ctr. Corp., 2019 U.S. Dist. LEXIS

**H. GEICO's First Cause of Action States a Claim Against Feijoo P.A. for a Declaratory Judgment**

GEICO's First Cause of Action seeks a declaratory judgment to the effect that Feijoo P.A. may not recover on any of its <u>outstanding</u> PIP billing. See Docket No. 1, ¶¶ 885-888. The Feijoo Defendants contend that GEICO cannot state a claim for a declaratory judgment because: (i) Florida's PIP statutes "provide[] a mechanism for [GEICO] to challenge any bills it has not yet paid"; (ii) GEICO has not sufficiently alleged violations of pertinent statutes in the Complaint; and therefore (iii) there is no justifiable controversy. See Docket No. 38, pp. 14-16.

The Feijoo Defendants are wrong. First, "[f]or a justiciable controversy under the Declaratory Judgment Act to exist, the alleged facts must show that there is a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment". <u>Cameron v. Scottsdale Ins. Co.</u>, 2016 U.S. Dist. LEXIS 176648 at * 5 (S.D. Fla. 2016)(internal quotations and citation omitted). Of course, in the present case, GEICO alleges that the Feijoo Defendants have submitted fraudulent PIP billing to GEICO that currently remains outstanding and unpaid, and seeks a declaration that it need not pay the billing because of the fraudulent activity alleged in the Complaint.

The Feijoo Defendants never manage to explain how GEICO's ability to "challenge" their outstanding fraudulent PIP claims would eliminate the justiciable controversy regarding the outstanding PIP claims. Were GEICO to deny the PIP claims, Feijoo Defendants could then commence a breach of contract action to recover on the PIP claims. <u>See</u>, <u>e.g.</u>, Fla. Stat. § 627.736(10); <u>State Farm Mut. Auto. Ins. Co. v. Nichols</u>, 932 So. 2d 1067, 1072 (Fla. 2006)(noting that "[a] PIP suit seeks to recover damages for breach of an insurance contract."); <u>Progressive Exp. Ins. Co. v. McGrath Cmty. Chiropractic</u>, 913 So. 2d 1281, 1285 (Fla. 2d DCA 2005)(a medical provider may bring an action for PIP benefits if the insured has assigned "his or her right to such benefits under the policy to the medical provider.") Indeed, and as explicitly alleged in GEICO's Complaint, "Defendants have hired law firms to pursue collection of the fraudulent charges for the

---

104630 at * 16 (S.D. Fla. 2019)(rejecting similar argument that plaintiff-insurers in PIP fraud case were "seeking a second bite at the apple" because "many of the insureds' claims were litigated in the County Court", considering that "[p]reclusion is an affirmative defense that should be raised under Rule 8(c), rather than in a motion to dismiss", and in any case the defendants had not introduced any certified copies of the records from the supposedly-preclusive state court proceedings).

Fraudulent Services from GEICO and other insurers. These law firms routinely file expensive and time-consuming litigation against GEICO and other insurers if the charges are not promptly paid in full." See Docket No. 1, ¶ 882.

Against this backdrop – and tellingly – the Feijoo P.A. Defendants do not cite to a single case in which a plaintiff-insurer's declaratory judgment claim, seeking this type of declaratory relief, has been dismissed. The reason for this is simple: Federal courts in Florida – including the 11th Circuit – regularly permit plaintiff-insurers to seek declaratory judgments to the effect that they are not liable to pay any pending, fraudulent PIP insurance billing. See, e.g., State Farm Fire & Cas. Co. v. Silver Star Health & Rehab, 739 F.3d 579, 584 (11th Cir. 2013)(affirming declaratory judgment for insurer, to the effect that the insurer was not liable to pay pending PIP billing from healthcare provider)[12]; Allstate Ins. Co. v. Vizcay, 826 F.3d 1330 (11th Cir. 2016)(same); State Farm Mut. Auto. Ins. Co. v. Comprehensive Physician Servs., 2014 U.S. Dist. LEXIS 172824 at * 7 - * 8 (M.D. Fla. 2014)(denying motion to dismiss plaintiff-insurer's declaratory judgment claim, where insurer sought a declaration that it was not liable to pay any pending, fraudulent billing).

Indeed, the defendants in the substantially-similar DG Esthetic action raised this exact same argument in their motion to dismiss. See DG Esthetic, at Docket No. 21, pp. 7-8 (arguing, in substance, that GEICO could not show a real and immediate threat of future harm because it had the ability to deny the defendants' PIP claims). After GEICO raised the same counterarguments set forth above (see DG Esthetic, at Docket No. 22, pp. 7-9), the court denied the motion to dismiss the declaratory judgment claim. See DG Esthetic, at Docket No. 29; see also Alternative Medical Center of Florida, supra, at Docket No. 17, p. 5 (holding that a virtually identical declaratory judgment claim was legally sufficient); see also Cereceda, supra at Docket Nos. 57, 72 (same); A&C Medical Center, supra at *4 (S.D. Fla. 2019)(Martinez, J)(same); see also Alternative Medical Center of Florida, supra, at Docket No. 17, p. 5 (holding that a virtually identical declaratory judgment claim was legally sufficient).

---

[12] The Feijoo Defendants attempt to distinguish this Complaint from Silver Star by incorrectly contending that, unlike in Silver Star, Plaintiffs fails to allege violations of the "subject statutes" and therefore cannot show that every bill submitted by the Feijoo Defendants is not compensable. See Docket No. 38, p. 16. However, as detailed above, GEICO indeed has sufficiently alleged that the Feijoo Defendants violated the Clinic Act, Patient Brokering Act, and Self-Referral Act, thus rendering the bills submitted by the Clinic Defendants non-compensable.

## II. **The Defendants' Motion to Strike Should be Denied in its Entirety**

As this Court has observed, a motion to strike is "a drastic, disfavored remedy." Agrelo v. Meloni Law Firm, 2015 U.S. Dist. LEXIS 195681 at *3 (S.D. Fla. 2015)(internal quotations and citation omitted)(Martinez, J).

In particular, motions to strike "will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." Heard v. Martin Cty. Sheriff's Office, 2014 U.S. Dist. LEXIS 203555 at *33 (S.D. Fla. Aug. 8, 2014)(internal quotations and citation omitted)(Martinez, J.).

In the present case, the Feijoo Defendants do not identify any allegations in the Complaint that actually have "no possible relation to the controversy and may cause prejudice to one of the parties". Instead, the Feijoo Defendants appear to contend that:

(i) Paragraph 8 of the Complaint should be struck because it supposedly contains "attempts to paint Dr. Feijoo and the other medical providers as criminals" – though paragraph 8 of the Complaint simply alleges that the Defendants' scheme is the latest in a long and well-documented series of insurance fraud schemes that have plagued Florida.

(ii) Paragraphs 16-19 of the Complaint should be struck because it "does nothing to further the causes of action" and attempts to portray Machado as a criminal. However, these paragraphs of the Complaint allege that Machado – the owner of We Care – was engaging in a similar type of fraud with another health care clinic he owned during the same time period when he owned We Care. Although this allegation standing alone may not be sufficient to demonstrate scienter as it relates to Machado's fraudulent operation of We Care, it certainly is relevant to the scienter inquiry and by extension to GEICO's fraud allegations.

(iii) Paragraphs 32-36 of the Complaint should be struck because "the allegations are scandalous and immaterial to any of the claims made by GEICO". See Docket No. 38, p.21. However, these paragraphs of the Complaint allege that Nodarse had a motive to participate in Defendants' fraudulent scheme because her prior history in insurance fraud schemes – which can be located by prospective employers, referral sources, and patients through a simple internet search – made it substantially more difficult for her to obtain legitimate employment, and therefore makes the existence of her fraudulent intent that much more likely. [13]

---

[13] There is no basis to strike factual allegations of this type. See, e.g., Government Employees Ins. Co., et al. v. Eastern Neurodiagnostic Associates, P.C., et al., D.N.J. Case No. 1:12-cv-07074-NLH-JS, at Docket Nos. 35, 44, 55 (in PIP fraud case, denying defendant-physician's motion to strike references in complaint to his substance abuse issues, which resulted in public, professional discipline, where the plaintiff-insurers had argued that the allegations were relevant to show the defendant-physician's fraudulent intent). What is more, Machado's arrest history and Nodarse's disciplinary

      (iv)    Allegations of fraud that occurred in 2013 should be struck because they are barred by the statute of limitations. The Defendants' arguments ignore GEICO's allegations – which should be accepted as true for purposes of this motion – to the effect that the Feijoo Defendants acted to conceal their scheme, and that GEICO therefore did not discover and could not reasonably have discovered the scheme until shortly before it filed its Complaint. See Docket No. 1, ¶ 884. Consequently, equitable tolling militates against dismissal or the striking of GEICO's claims at the pleading stage. [14]

Accordingly, the Feijoo Defendants' motion should be denied to the extent that it seeks to strike any part of Plaintiffs' Complaint.

### III.     To the Extent That the Court Finds any Defect, GEICO Requests Leave to Replead

GEICO believes that its Complaint adequately alleges its claims against the Defendants. To the extent, however, that the Court finds the Complaint to be inadequate in any manner, GEICO respectfully requests leave pursuant to Fed. R. Civ. Proc. 15(a) to serve an amended complaint, as it believes that any such inadequacies would be merely issues of technical pleading rather than substantive defects in the claims. When a party requests leave to amend its complaint, permission generally should be freely granted. See, e.g., Chrystall v. Serden Techs., Inc., 2011 U.S. Dist. LEXIS 144613 at *18 (S.D. Fla. 2011)

---

history are matters of public record, and where supposedly prejudicial matter already is in the public domain, the inclusion of such information in a complaint will not unduly prejudice a Defendant. See, e.g., Church & Dwight Co. v. SPD Swiss Precision Diagnostics, 10-453 (FLW), 2010 U.S. Dist. LEXIS 133114, at *32 (D.N.J. Dec. 16, 2010)

[14] See State Farm Mut. Auto. Ins. Co. v. Health & Wellness Servs., 389 F. Supp. 3d at 1151 (S.D. Fla. 2019) (denying motion to dismiss similar PIP fraud complaint on limitations grounds where – much as in the present case – the plaintiff-insurer "specifically allege[d] in its complaint that, until just prior to initiating this action, [it] was unaware of the facts supporting its case and the Defendants actively concealed their misconduct", rendering dismissal on limitations grounds improper at the pleading stage); State Farm Mut. Auto. Ins. Co. v. Kugler, 2011 U.S. Dist. LEXIS 107005 at *43 (S.D. Fla. 2011) (rejecting a motion to dismiss the insurer's fraud complaint on limitations grounds, where the limitations periods were subject to equitable tolling, which the court found inappropriate for resolution on a motion to dismiss); State Farm Mut. Auto. Ins. Co. v. B&A Diagnostic, Inc., 104 F. Supp. 3d 1366, 1376 (S.D. Fla. 2015)(rejecting dismissal of PIP fraud case on limitations grounds, because it was not apparent from the face of the complaint that the insurer's claims were time-barred.

## CONCLUSION

For the reasons stated above, the Feijoo Defendants' motion to dismiss and to strike should be denied in its entirety.

Respectfully submitted,

*/s/ John P. Marino*
John P. Marino (FBN 814539)
Lindsey R. Trowell (FBN 678783)
Kristen L. Wenger (FBN 92136)
SMITH, GAMBRELL & RUSSELL, LLP
50 North Laura Street, Suite 2600
Jacksonville, Florida 32202
ltrowell@sgrlaw.com
jmarino@sgrlaw.com
kwenger@sgrlaw.com

Yonatan Bernstein (admitted pro hac vice)
RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New York 11550
yonatan.bernstein@rivkin.com

## CERTIFICATE OF SERVICE

I certify that on August 17, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will provide notice to the counsel of record on the attached service list.

*/s/ John P. Marino*
Attorney