UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case Number: 20-22044-CIV-MARTINEZ-OTAZO-REYES

GOVERNMENT EMPLOYEES INSURANCE
CO. et al.,
    Plaintiffs,

vs.

MANUEL FEIJOO, M.D., et al.,
    Defendants.
_____/

## OMNIBUS ORDER ON MOTIONS TO DISMISS

THIS CAUSE is before the Court upon three pending Motions to Dismiss. Specifically, this Order addresses Defendants Manuel Martinez Varela and We Care Medical Services, Inc.'s Motion to Dismiss ("We Care Motion to Dismiss"), [ECF No. 23]; Defendants Miami Medical Group, Inc., Juan Jimenez, Graciela Jimenez, Jose Marquez, M.D., Maria Nodarse, D.C., Yara Vazquez, and Hai Uzan's Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. Pro. 12(b)(6) ("Miami Medical's Motion to Dismiss"), [ECF No. 24]; and Defendant Feijoo's Motion to Dismiss and to Strike, [ECF No. 38] (collectively, "Motions to Dismiss" or "Motions").

On March 2, 2021, the Court held a hearing on the foregoing Motions. The Court has carefully considered the Motions, Plaintiffs' Responses in Opposition thereto, the parties' respective oral arguments, the pertinent portions of the record, and is otherwise duly advised in the premises. The Motions are granted in part and denied in part.

**I.    Background**

Plaintiffs ("GEICO") bring this action against a series of healthcare clinics seeking to recover approximately $3.1 million for allegedly submitting thousands of fraudulent "no-fault" insurance charges, also known as "personal injury protection" or "PIP" charges. GEICO alleges

that Defendants provided "medically unnecessary, illusory, unlawful, and otherwise non-reimbursable health care services, including putative initial examinations, follow up examinations, range of motion testing, muscle strength testing, and physical therapy services" to Florida automobile accident victims eligible for coverage under GEICO's PIP insurance policies. Compl. ¶ 1. GEICO also seeks a declaration that it is not legally obligated to reimburse Defendants on any currently outstanding PIP charges that Plaintiffs contend are also fraudulent. *Id*. at ¶ 2. Specifically, GEICO alleges that Defendants' billing records falsely represented that Defendants were operating in compliance with Florida's Health Care Clinic Act, Florida's Patient Brokering Act, and Florida's Self-Referral Act. *Id*. According to GEICO, the Defendants were not only non-compliant with the foregoing statutes and regulations, but were also billing for noncompensable services and services that were never actually performed. *Id*.

In sum, GEICO alleges that these clinics lacked the required licenses to collect no-fault insurance benefits; unlawfully billed for services done by massage therapists or chiropractic assistants who were not supervised by a doctor or licensed physical therapist; did not appoint legitimate medical directors; inflated the degree of clients' injuries; upcoded and overbilled for unnecessary or non-existent examinations and therapies; offered, solicited, or otherwise provided kickbacks, or engaged in a fee-splitting arrangement; and referred patients to health care entities in which the providers were investors or had an investment interest.

Based on these allegations, GEICO asserts thirty-four (34) counts seeking a declaratory judgment and alleging various violations of RICO, 18 U.S.C. §§ 1962(c)–(d), violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201–501.213, violations of Florida's Civil Remedies for Criminal Practices Act, Fla. Stat. §§ 772.101–772.19, common law fraud, and unjust enrichment. GEICO has named twenty (20) Defendants, including five medical

clinics, the clinics' owners, the clinics' appointed medical directors, physicians associated with the clinics, and the clinics' massage therapists.[1]

The movants offer several grounds for dismissal, most of which are universal to all three motions. Namely, all Defendants contend that Plaintiffs' Complaint lacks the requisite particularity under Rule 9(b) for their claims sounding in fraud. In a similar vein, Defendants contend that the Complaint impermissibly lumps the Defendants together, constitutes an impermissible shotgun pleading, and cannot plausibly allege claims for fraud because Plaintiffs' allegations show an absence of justifiable reliance.

## II.     Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and the exhibits attached thereto, including documents referred to in the complaint that are central to the claim. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity."). As a general rule, "[i]n ruling on a motion to dismiss, the court must accept the well pleaded facts as true and resolve them in the light most

---

[1] The case has been stayed as to Defendant Jose Estevez based on a Suggestion of Bankruptcy. *See* ECF Nos. 42, 50. Additionally, GEICO has since voluntarily dismissed Defendant Tony Nguyen, D.O., without prejudice. *See* ECF Nos. 57, 60.

favorable to the plaintiff." *St. Joseph's Hosp., Inc.*, 795 F.2d at 954. Nonetheless, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

### III. Discussion

The Court will first set forth the applicable statutory and regulatory framework, and then address the merits of Defendants' Motions.

#### A. Florida's Motor Vehicle No-Fault Law

Florida's Motor Vehicle No-Fault Law ("No-Fault Law") requires automobile insurers to provide PIP coverage to victims of motor vehicle accidents "for reasonable, necessary, related and lawful treatment, without regard to fault." *State Farm Mut. Auto. Ins. Co. v. B&A Diagnostic, Inc.*, 145 F. Supp. 3d 1154, 1163 (S.D. Fla. 2015) (citing Fla. Stat. §§ 627.730–627.7405). Covered medical benefits include reimbursement only for "services and care that are lawfully provided, supervised, ordered or prescribed…." Fla. Stat. § 627.736(1)(a)(1). Under the No-Fault Law, "lawful" or "lawfully" means "in substantial compliance with all relevant applicable criminal, civil, and administrative requirements of state and federal law related to the provision of medical services or treatment." *Id.* § 627.732(11).

Insurers are not required to pay a claim (1) for any service or treatment that was not lawful at the time rendered; (2) to any person who knowingly submits a false or misleading statement relating to the claim; (3) with respect to a bill that does not substantially meet the statute's billing requirements; or (4) for any service or treatment that is "upcoded." *See id.* § 627.736(5)(b). "Upcoding" is defined as "an action that submits a billing code that would result in payment greater in amount that would be paid using a billing code that accurately describes the services performed." *Id.* § 627.732(14).

4

To satisfy the statute's billing requirements, service providers, like the Defendants here, must properly complete and submit applicable Centers for Medicare and Medicaid Services ("CMS") billing forms; use proper CPT codes; and ensure statements of medical services do not include charges for services provided by an entity without valid licensure to perform such services. *See id*. § 627.736(5)(d). Additionally, to be eligible for PIP reimbursement, healthcare services must be medically necessary. *See id.* § 627.736(1)(a). To be considered "medically necessary," the underlying healthcare service must be (a) provided in accordance with generally accepted standards of medical practice; (b) clinically appropriate in terms of type, frequency, extent, site, and duration; and (c) not be primarily for the convenience of the patient, physician, or other healthcare provider. *See id.* § 627.732(2).

The No-Fault Law also specifically precludes reimbursement for massage therapy. Reimbursable medical benefits "do not include massage…regardless of the person, entity, or licensee providing massage…and a licensed massage therapist…may not be reimbursed for medical benefits under this section." *Id.* § 627.736(1)(a)(5); *see also Gov't Emps. Ins. Co. v. Quality Diagnostic Health Care, Inc.*, No. 18-20101-CIV, 2019 WL 1383654, at *6 (S.D. Fla. Feb. 26, 2019) (holding while it is not unlawful for unsupervised massage therapists to practice limited forms of physical therapy incidental to their massage practice, to the extent these services are performed without supervision by another licensed medical professional, they constitute massage rather than physical therapy and are therefore non-reimbursable). On the other hand, a registered chiropractic assistant may assist with patient examinations or treatments other than manipulations or adjustments, provided that they are working under the direct supervision and responsibility of a licensed chiropractor or certified chiropractic physician's assistant. *See* Fla. Stat. § 460.4166(2); *see also* Fla Stat. § 460.4166(1).

B. <u>The Health Care Clinic Act</u>

The Florida legislature enacted the Health Care Clinic Act ("Clinic Act") to improve the regulation of health care clinics throughout the state. *See* Fla. Stat. § 400.990; *see also Gov't Emps. Ins. Co. v. DG Esthetic and Therapy Ctr., Inc.*, No. 18-20921-CIV, 2019 WL 1992930, at *6 (S.D. Fla. Apr. 19, 2019). As part of this comprehensive oversight plan, the Clinic Act requires health care clinics to appoint a medical director. *See* Fla. Stat. § 400.9935(1) (clinics owned by non-licensed individuals shall "appoint a medical director who shall agree in writing to accept legal responsibility for [certain] activities on behalf of the clinic."). A medical director typically must review patient referral contracts and maintain compliance with statutory recordkeeping requirements. *See id.* Medical directors are also required to review clinic billings to ensure they are lawful. *See id.*

The Clinic Act also provides an exemption for health clinics "that [are] wholly owned by one or more licensed health care practitioners…if one of the owners who is a licensed health care practitioner is supervising the business activities and is legally responsible for the entity's compliance with all federal and state laws." *See* Fla. Stat. § 400.9905(4)(g). Nonetheless, under this exemption, "a health care practitioner may not supervise services beyond the scope of that practitioner's license." *Id*. Importantly, "[a] charge or reimbursement claim made by or on behalf of a clinic that is…operating in violation of this part, regardless of whether a service is rendered or whether the charge or reimbursement claim is paid, is an unlawful charge and is noncompensable and unenforceable." *Id.* § 400.9935(3).

C. <u>The Patient Brokering Act and the Self-Referral Act</u>

Florida's Patient Brokering Act broadly prohibits offering or paying any "commission, benefit, bonus, rebate, kickback, or bribe, directly or indirectly, in cash or in kind" or engaging "in

any split-fee arrangement, in any form whatsoever, to induce the referral of a patient or patronage to or from a health care provider or health care facility." Fla. Stat. § 817.505(1)(a). The statute also prohibits soliciting or receiving any such commission, as well as aiding or otherwise participating in conduct prohibited by the statute. *See id.* § 817.505(1)(b)–(d).

Similarly, the pertinent portions of Florida's Self-Referral Act state that "[a] health care provider may not refer a patient for the provision of designated health services to an entity in which the health care provider is an investor or has an investment interest." Fla. Stat. § 456.053(5)(a). Additionally, "[n]o claim for payment may be presented by an entity to any individual, third-party payor, or other entity for a service furnished pursuant to a referral prohibited under this section." *Id.* § 456.053(5)(c).

D. Arguments for Dismissal

Having outlined the applicable statutory framework, the Court now turns to Defendants' arguments for dismissal. Federal Rule of Civil Procedure 8(a) requires "a short and plain statement…showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). GEICO's Complaint here is neither short nor plain. Indeed, it contains thirty-four (34) causes of action compiled into over 1,134 paragraphs spanning 312 pages—not including subparagraphs or the 554 pages of exhibits attached thereto. The Court appreciates that this a complex civil conspiracy case. And the Court is cognizant of the fact that "a complaint…will not fail for mere surplusage," so long as it is sufficient to give Defendants notice of the claims against them. *Bailey v. Janssen Pharmaceutica, Inc.*, 288 F. App'x 597, 603 (11th Cir. 2008); *see Lenz v. Michaels Org., LLC*, No 8:19-cv-2950-TPB-AEP, 2020 WL 6119376, at *3 (M.D. Fla. Oct. 16, 2020) ("Although the complaint is unnecessarily lengthy…the Court finds that the complaint is sufficient to give Defendants notice…."). Nonetheless, as this Court has warned GEICO in the past, "the

7

particularity requirement under 9(b) does not excuse a lack of editing for efficiency." *Gov't Emps. Ins. Co. v. A&C Med. Ctr. Servs., Corp.*, No. 18-24198-CIV, ECF No. 114 at 3 (S.D. Fla. Aug. 7, 2019). Accordingly, this Court will again require GEICO to file an amended—and much shorter— complaint, specifically to cure "GEICO's penchant for repetition and addition of unnecessary legal authority."[2] *Id.*; *see also Gov't Emps. Ins. Co. v. Merced*, No. 8:20-cv-00802-KKM-AAS, Pretrial Conf. Tr. 5:10–7:25, ECF No. 97 (M.D. Fla. July 28, 2020) (while not making a merits determination, requiring GEICO to file amended, shortened complaint in similar case, citing concerns about misjoinder and failure to comply with Rule 8).[3]

Nonetheless, as this Court has noted in a similar case brought by GEICO, "[t]his case is not unique." *A&C Med. Ctr. Servs., Corp.*, ECF No. 114 at 2. Several courts throughout the Eleventh Circuit, including this one, have already rejected many of the dismissal arguments the movants raise here based on lack of particularity, purported shotgun pleading[4], and implausibility. *See, e.g.*, *id.*; *DG Esthetic and Therapy Ctr., Inc.*, 2019 WL 1992930, at *6; *Quality Diagnostic Health Care, Inc.*, 2019 WL 1383654, at *6; *Gov't Emps. Ins. Co. v. Alternative Med. Ctr. of Fla., Inc.*, No. 16-24035-CIV, ECF No. 17 (S.D. Fla. June 30, 2017); *Gov't Emps. Ins. Co. v. AFO Imaging, Inc.*, No. 8:20-cv-2419-VMC-CPT, 2021 WL 734575, at *4–12 (M.D. Fla. Feb. 25, 2021); *Gov't Emps. Ins. Co. v. KJ Chiropractic Ctr. LLC*, No. 16:12-cv-1138-Orl-36DAB, 2013

---

[2] As just one example, neither the Court nor the Defendants need to be told more than once which organ systems are recognized by the CPT Assistant. *See, e.g.*, Compl. ¶¶ 406, 596, 742. Nor does the Complaint need to include verbatim clinical examples for various CPT codes. Persistent repetitive summaries of the relevant statutory schemes are unnecessary, inefficient, and may lead to confusion (or annoyance).

[3] The Court shares Judge Honeywell's concerns about potential misjoinder, especially where it is unclear how the separate clinics are related to one another aside from the fact that they all have hired Dr. Feijoo on some level. This is also likely why the Complaint reads as five separate complaint/summary judgment hybrids.

[4] With the exception of GEICO's claim for declaratory relief, as discussed *supra*.

8

WL 12155947, at *3–8 (M.D. Fla. Oct. 23, 2013), *report and recommendation adopted by* 2014 WL 12617566 (M.D. Fla. Mar. 6, 2014).

While Defendants contend that they have not been adequately informed of the nature of their participation in the alleged frauds, the Court finds that the detailed allegations, coupled with the exhibits attached to the Complaint, suffice at the motion to dismiss stage. *See id.* Again, "[t]he Court will not reinvent the wheel here." *A&C Med. Ctr. Servs., Corp.*, ECF No. 114 at 3. Aside from the issues set forth below, the Court will not delve into a full-scale analysis of the Complaint's sufficiency based on particularity or alleged shotgun pleading.

Additionally, Defendants' arguments as to GEICO's failure to act as a reasonable consumer are unpersuasive.[5] *See Suite 225, Inc. v. Lantana Ins. Ltd.*, 625 F. App'x 502, 508 (11th Cir. 2015) (agreeing with lower court decision that found an insured's argument "absurd" that insurer "should have conducted a more thorough investigation" and agreeing further that "the insurer is entitled to rely on the representations of an insured, without checking all its files to determine if the insured is committing a fraud"). To the extent that GEICO knew or should have known about Defendants' alleged fraudulent billing practices, any evidence of that can be—and is more appropriately—adduced at the summary judgment stage.

1. *Extent of Supervision Issue*

Miami Medical's Motion to Dismiss raises an argument seemingly absent from the plethora

---

[5] We Care Medical's contention that GEICO lacks standing because Florida's healthcare licensing and compliance statutes and regulations, such as the Clinic Act, the Patient Brokering Act, and the Self-Referral Act, do not create private rights of actions is also misplaced. And has previously been rejected by other courts. *See KJ Chiropractic Ctr. LLC*, 2013 WL 12155947, at *6. Plaintiffs are not seeking relief under these statutes; they are citing the alleged violation of these statutes as support for their claims of fraud. This is sufficient. *Id.*; *see also State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery*, LLC, 278 F. Supp. 3d 1307, 1329 (S.D. Fla. Sept. 25, 2017) (finding that plaintiff did "not attempt to assert a private cause of action for violations of the Patient-Brokering, Anti-Kickback, Anti-Rebate, or Insurance Fraud Statutes, but rather contends that that defendants' conduct in violation of these statutes is unjust….") (cleaned up).

9

of GEICO's fraudulent PIP-claim cases in this Circuit, at least at the motion to dismiss stage. Essentially, Defendants argue that GEICO's contention that "direct supervision" is required is a self-serving legal construction of the applicable statutes, when in reality, and at the very least, it is unclear what constitutes appropriate supervision. Therefore, according to Defendants, even if GEICO is correct in its interpretation that the statutes require direct supervision, GEICO cannot plead that the Defendants *knowingly* committed fraud under the No-Fault Law. *See* ECF No. 24 at 4–5. If it was unclear what level of supervision is required, Defendants could not have knowingly defrauded GEICO.

The No-Fault Law instructs that a person acts "knowingly" when "a person, with respect to information, has actual knowledge of the information; acts in deliberate ignorance of the truth or falsity of the information; or acts in reckless disregard of the information, and *proof of specific intent to defraud is not required*." *See* Fla. Stat. § 627.732(10) (emphasis added). First, GEICO alleges not only that the extent of supervision was inappropriate under the statute, but also that Defendants were billing for services provided without any supervision whatsoever. These allegations describe activity that would undoubtedly fall short of the definition of appropriate supervision, whether that definition is clear or not. Additionally, even if the Court were to agree that the level of supervision required is not firmly established, at the motion to dismiss phase, it is enough that GEICO has alleged that the Defendants knew that they were submitting claims without the requisite level of supervision. And the factual allegations provided in support of this assertion are sufficient to establish at least the plausibility of Defendants' knowledge. The veracity of that assertion is better determined at a later stage in the proceedings. Accordingly, the Court will not dismiss the Complaint on this basis.

2. *<u>Defendants Yara Vazquez & Hai Uzan</u>*

Defendant Vazquez is a licensed massage therapist and a registered chiropractic assistant in Florida. Defendant Uzan is also a licensed massage therapist in Florida. Both Defendants are alleged to have "purported to perform many of the [f]raudulent services on behalf of Miami Medical." Compl. ¶¶ 3(xii)–(xiii). Defendants contend that the Complaint fails to set forth any allegations that Vazquez and Uzan actually participated in the fraud, aside from providing the services they were hired to perform. It is true that the Complaint suggests these individuals played a minor role by simply performing the therapy; nonetheless, this goes to the extent of their knowledge of the fraud, which, again, is better determined at a later stage of the proceedings. At the motion to dismiss phase, it is sufficient to allege that they indeed knowingly participated in Miami Medical's allegedly fraudulent billing practices by misrepresenting the level of supervision they were receiving while providing physical therapy to patients.

3. *<u>Declaratory Judgment</u>*

In Count I of the Complaint, GEICO seeks declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02. Specifically, GEICO seeks a judgment declaring that "Feijoo, P.A., We Care, New Life, Accident Rehab, and Miami Medical have no right to receive payment for *any pending bills* submitted to GEICO." Compl. ¶ 888 (emphasis added). According to GEICO, there remains more than $75,000.00 in pending fraudulent claims submitted. *Id*. ¶ 886.

The Supreme Court has noted that "district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdiction prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289 (1995). Courts in this Circuit have differed as to whether allegations of this kind create a justiciable controversy under Article III of the United States Constitution. *Compare Gov't Emps.*

11

*Ins. Co. v. Alternative Med. Ctr. of Fla., Inc.*, No. 16-24035-CIV, 2017 WL 9360860, at *3 (S.D. Fla. June 30, 2017) (finding that there is a "substantial controversy" as to "whether GEICO is required to pay the allegedly fraudulent bills submitted by [defendants]") *with KJ Chiropractic Ctr. LLC*, 2013 WL 12155947, at *7–8 (finding that the majority of the declaratory relief sought by GEICO was "addressed to injuries alleged to have occurred in the past," and therefore insufficient to assert a justiciable controversy under the Declaratory Judgment Act).

For purposes of this case, the Court takes issue with a few things. First, "Plaintiffs seeks several declarations regarding a variety of contested legal and factual issues against differing Defendants, all in one count." *KJ Chiropractic Ctr. LLC*, 2013 WL 12155947, at *7. What's more, GEICO seeks blanket relief as to *any* of the pending claims from all Defendants, without parsing which amount is attributed to each or how each pending claim is alleged to be fraudulent. This violates the pleading standards set forth in Federal Rules of Civil Procedure 8 and 10. *See* Fed. R. Civ. P. 10 (each claim to be stated in a separate count); *see also KJ Chiropractic Ctr. LLC*, 2013 WL 12155947, at *7. As such, Count I is dismissed without prejudice.

E.  Feijoo Defendants' Motion to Strike

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading… any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Striking a pleading is considered a "drastic remedy" and is generally viewed "with disfavor." *See Exhibit Icons, LLC v. XP Cos.,* 609 F. Supp. 2d 1282, 1300 (S.D. Fla. 2009); *Gill-Samuel v. Nova Biomedical Corp.*, 298 F.R.D. 693, 699 (S.D. Fla. 2014). A motion to strike will therefore be denied "unless the material has no possible relation to the controversy and may cause prejudice to one of the parties." *Williams v. Delray Auto Mall, Inc.*, 289 F.R.D. 697, 700 (S.D. Fla. 2013).

The allegations that Defendants contend should be stricken do not meet this rigorous

standard. Therefore, the Feijoo Defendants' request to strike is denied.

Accordingly, it is **ORDERED and ADJUDGED** that:

1. Defendants' Motions to Dismiss, [ECF Nos. 23, 24, 38], are **GRANTED IN PART and DENIED IN PART** as set forth herein.

2. Count I of the Complaint is **DISMISSED without prejudice**.

3. GEICO shall file an amended complaint of no more than seventy-five (75) pages, exclusive of exhibits, **on or before April 9, 2021**.

4. Defendants shall answer the amended complaint within ten (10) days of its filing. If GEICO includes amended requests for declaratory relief, Defendants may move to dismiss as to those counts only.

DONE AND ORDERED in Chambers at Miami, Florida, this 19th day of March 2021.

_____
JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Otazo-Reyes
All counsel of record